## LEWIS v. SHAINWALD.

*(Circuit Court, D. California. November 25, 1881.)*

1. **JURISDICTION OF CIRCUIT COURTS—EQUITY RULE 90.**
   Equity rule 90, providing that, where the rules prescribed by the supreme or circuit courts do not apply, the practice of the circuit courts shall be regulated by the present practice of the high court of chancery of England, etc., affects the practice only of the circuit courts, and does not apply in determining questions of jurisdiction.

2. **CREDITORS' BILL—JURISDICTION OF FEDERAL COURTS—FRAUD.**
   By virtue of the jurisdiction attaching to courts of equity in cases of fraud, and independent of any statute giving the right to maintain a creditors' bill, a federal court may entertain a bill alleging the return of an execution *nulla bona*, and that the debtor, pending the suit, has converted part of his property into cash, and is engaged in disposing of and concealing the remainder, or is about to carry it out of the state, all with the declared intent of so "fixing" his property that it cannot be seized to satisfy judgment.

3. **NE EXEAT—JURISDICTION OF FEDERAL DISTRICT COURTS.**
   Under Rev. St. U. S. § 716, providing that the supreme court and the circuit and district courts shall have power to issue writs of *scire facias*, and "all other writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law," the district courts have power to issue writs of *ne exeat republica*.

4. **SAME—WHEN GRANTED.**
   The writ of *ne exeat republica* is not a mere provisional remedy, in the sense that it can only be issued pending the suit, and must expire with the rendition of judgment; on the contrary, its issuance may be provided for in the final decree, and it will continue in force until dissolved by the court, or until the decree is satisfied.

In Equity. Bill to reach property not subject to execution. On appeal from the district court. For former reports see 6 Fed. Rep. 753, 766, 8 Fed. Rep. 878.

*J. D. Crittenden*, for complainant.

*Delos Lake*, for respondent.

Before SAWYER, Circuit Judge.

SAWYER, J. · This is a bill in equity, called by appellant's counsel a "creditors' bill," based upon a prior proceeding, in which a decree had been entered in the district court against the respondent, appellant here, for a large sum of money, and execution issued, upon which a return of *nulla bona* had been made. It is claimed by the respondent that, prior to the adoption of the Revised Statutes in the state of New York, no such thing as a creditors' bill, in the sense since used, was known; that a creditors' bill of the character here set forth was unknown to the court of chancery; and that, therefore, the case is not properly one of equity jurisdiction. Upon this proposition some decisions of the English courts are cited; and it appears that some of the latter decisions overrule some of the former ones upon certain points. In this connection equity rule 90 is cited as having a bearing upon the case, as prescribing that the English chancery practice shall be adopted in cases where our equity rules do not apply. That rule is as follows:

"In all cases where the rules prescribed by this court or by the circuit court do not apply, the practice of the circuit court shall be regulated by the present practice of the high court of chancery of England, so far as the same may

reasonably be applied consistently with the local circumstances and local convenience of the district where the court is held, not as positive rules, but as furnishing just analogies to regulate the practice."

In my judgment, that rule does not in any way affect the question. The jurisdiction of this court is derived from the constitution and laws of the United States, and these rules are simply rules of practice for regulating the mode of proceeding in the courts. They do not, and could not, properly, either limit or enlarge the jurisdiction of the court. The rule quoted simply regulates the practice in exercising the jurisdiction of the court in those respects wherein the rules adopted do not apply; but the practice of the high court of chancery is to be applied, not as controlling, but simply as furnishing just analogies to regulate the practice.

I am satisfied that creditors' bills of some kinds, whether of the precise character of that now under consideration or not, were entertained both by the English chancery courts and in the courts of chancery in the several states, particularly in the courts of New York, prior to the adoption of the Revised Statutes of the latter state. The creditors' bills which were recognized previous to that time were, perhaps, in different form from that then adopted; but there undoubtedly were instances of bills maintained by creditors to subject the assets of debtors to the payment of their debts. The discussions upon the subject related mainly to the character of the assets and the circumstances of the particular case. In the case of *Hadden* v. *Spader*, 20 Johns. 554, before the court of errors, and in which the decision of Chancellor KENT sustaining a creditors' bill is affirmed, I think the rule is established that certain assets can be reached and appropriated by a bill filed by a creditor; and several prior cases recognized the same principle. In the subsequent case of *Donovan* v. *Finn*, Hopk. Ch. 59, there was suggested some limitation. That case, however, did not overrule, or purport to overrule, as it could not, the decision of the court of errors in the case last referred to. Indeed, the two decisions, as to the real point involved and decided, do not conflict. The latter case was one into which the element of fraud, either actual or constructive, did not enter. It was simply a case where a legacy had been left to a debtor, which was in the hands of an executor, and a creditors' bill was filed to reach that legacy. There was no collusion or fraud, or voluntary conveyance, or other subject-matter of equity jurisdiction in the case. The debt was treated as an honest debt, and the chancellor held that it could not properly be reached by a creditors' bill. He recognizes, however, the propriety of filing such bills in cases of fraud. Frauds and trusts are in themselves subjects of equity jurisdiction. Indeed, matters of fraud and trusts are among the most extensive heads of equity jurisdiction. Wherever there is fraud in a case which cannot be fully remedied at law, equity intervenes and uncovers the fraud; and the fact that a creditor is injured by a fraudulent concealment or withholding of property brings him into such relations to the fraudulent transaction that he may, on that ground, invoke the equitable jurisdiction of a court of equity, have the fraud uncovered,

and take hold of the funds or the property fraudulently concealed and .withheld from him. He comes within the jurisdiction of the court, not merely because he is a creditor, not because his bill is a creditors' bill, but because he presents a case in which he sets forth matters of fraud or trust; and equity entertains his bill simply because he stands in such a relation to the fraudulent transaction that he is entitled to have the fraud uncovered, or a trust declared and enforced.

This principle is recognized in the case last referred to. I read from the decision as reported in 14 Amer. Dec. 533. After stating that "it is apparent that this case does not belong to any general head of equitable jurisdiction. such as fraud, trusts, accidents, mistakes, accounts, or the specific performance of contracts;" that "there is neither fraud nor trust nor accident, nor any other ingredient of equitable jurisdiction,"— the chancellor proceeds to say:

"The English cases cited proceeded, as I conceive, not upon the ground of subjecting the credits of the judgment debtor to the payment of his debts, but upon some ground of equitable jurisdiction, as fraud or trust, existing in each case. * * * The case of *Bayard* v. *Hoffman*, 4 Johns. Ch. 450, was not the case of a judgment creditor; but the object of the suit was to annul an assignment in trust, made by a debtor without consideration. The assignor was insolvent when the assignment was made. That fact not being then known, no actual fraud was intended; but the assignment had all the operation of fraud against the creditors of the insolvent debtor, and for these reasons the cause was of equitable jurisdiction. * * * The case of *Hadden* v. *Spader*, 5 Johns. Ch. 280, and 20 Johns. 554, was also a case of an assignment by an insolvent debtor of property upon various trusts. It was clearly a case of trust; the assignment was charged to have been made by fraud, and, though the answers denied that fraud was intended, the facts exhibited a case of fraud. The effect of the assignment, if it had prevailed, would have been to withdraw and screen from execution the property of the debtor. The assignment was held to be void, and the judgment creditor had relief. These are the principal cases which have been adjudged in this court, and in all of them some acknowledged ground of equitable jurisdiction existed. In general, they were suits to set aside conveyances, which prevented the seizure of property by the sheriff, and the conveyances have been considered frauds, either actual or constructive. * * * In giving relief in such cases, this court does not proceed upon the idea of giving execution against a species of property which is exempt from execution at law; but it acts upon some of the most ancient grounds of its jurisdiction, which enable it to give relief in cases of fraud and trust, either to a judgment creditor or to any other person whose just rights may be destroyed or impeded by such a cause. * * * I fully concur with Judge PLATT in his opinion given in the case of *Hadden* v. *Spader*, and in his view of the powers and jurisdiction of this court, in respect to the rights and remedies of creditors. The case now to be decided has not one feature of equitable jurisdiction. In it there is neither fraud nor trust nor conveyance of property, nor any interruption of the effect of an execution or the due course of justice at law. * * * But when equity has jurisdiction, by reason of some disposition of the debtor's property, made in fraud of the creditor, and when, in such a case, the sheriff of the county in which the property is situated returns upon the execution that no property is found, the return is important evidence to show that the fraudulent disposition has had effect by preventing the service of the execution. By the existing law, the property of a debtor, consisting of things in action held by him without fraud, is

not subject to the effect of any execution issued against his property; and, while a court of law does not reach these things by its execution, a court of equity does not reach them by its execution for the purpose of satisfying either judgments at law or decrees in equity. All conveyances made to defraud creditors are void, both in law and equity. When a fraud appears to a court of law, the conveyance is there adjudged void. When such a fraud is presented to this court, it is of equitable jurisdiction; and the property of the debtor, fraudulently transferred, is subject to the satisfaction of his debts, in favor of a creditor complaining of the fraud. Does an insolvent debtor transfer his property to another person, in trust for himself, or in such a manner as to defeat the effect of a judgment and an execution? This is the frequent case. It is a case of both fraud and trust, and it is of equitable jurisdiction. It was the case of *McDermutt* v. *Strong*, 4 Johns. Ch. 687, and of *Hadden* v. *Spader*, *supra*. In all such cases this court vacates the fraud, sets aside the conveyance in trust, and, acting both upon the debtor and his trustee, it does complete justice to the creditor. Thus the jurisdiction of this court reaches, and reaches effectually, those cases of fraudulent conveyances and assignments in trust which form the great and most vexatious impediment in the course of justice between creditor and debtor. Bills for discovery, where no relief is sought, also afford important aid to creditors against their debtors. But this court has no power to cause stocks, credits, and rights of action, held by a debtor, without fraud, to be sold or converted into money, to be transferred to the creditor, or to be applied to the payment of debts."

Now, this is the distinction between this case of *Donavan* v. *Finn* and the other cases referred to: In the latter case it is the element of fraud which brings them within the jurisdiction; and a creditor, as well as any other party who is injured by the fraud, is able to maintain a bill to have the fraudulent act vacated, and to be relieved from the consequences of it. In a note appended to the report of the case last cited it is said:

"It is doubtful, where there has been no legislation upon the subject, whether, in the absence of fraud or any other well-known ground for supporting the exercise of its jurisdiction, equity will assist a creditor to reach those assets of his debtor which under no circumstances could have been subject to execution at law."

A large number of cases are then cited, and it is then added:

"What stocks, choses in action, franchises, and other property which were not subject to execution at common law, can now, in the absence of any statute on the subject, be reached by a creditors' bill, must still be regarded as unsettled. By such bills, creditors have in several instances succeeded in obtaining satisfaction out of the interest of an heir or distributee while still in the hands of an executor or administrator."

Then follows another citation of numerous authorities, which I have not examined, as I did not consider it necessary to this decision.

In this case the charge of fraud is set up in the bill, in which it is alleged that the respondent has made fraudulent transfers of his property; has converted portions of it into money, and secreted the proceeds; that other property, to the amount of many thousands of dollars, has been concealed from the complainant, in order to prevent him from securing it by execution issued under the decree of the court; and that he is about to

carry all his money and other property beyond the jurisdiction of the court,—the notorious and declared purpose of all these acts being to defraud the complainant, and render it impossible for him to realize any portion of the amount to which he is entitled under the decree. By his demurrer the respondent admits these averments of the bill, and takes his stand upon the point that the court is without jurisdiction to entertain or determine a cause of the character of that which is set forth in the bill. The case of *Mountford* v. *Taylor*, 6 Ves. 787, which has been cited here, was a case similar to the one at bar. The bill stated that the judgments were obtained at a time when "the defendant was, ever since has been, and now is, seised for his own use of freehold estates for his life, or some greater estate; that the plaintiff sued out writs of *elegit* upon these judgments; but neither of them has been able to discover where the estates of the defendant are situate," and does not know what they are or where they are. But the complainant charges that in or about the year 1795, some years before, the defendant, upon taking a seat in the house of commons, took the oath as to his having the requisite amount of property to qualify him to act as a member of that body; and that "he also delivered to the clerk of the house of commons, or some other officer of the house, a schedule, containing the particulars of the estate, whereby he made out his qualifications; and the plaintiffs are unable to obtain the said schedule." They also state that if, as he pretends, he has since conveyed the estates of which his qualification was composed, "such conveyance was without consideration, and in trust for himself;" and the bill prayed for a discovery. The defendant demurred as to the main statements recited in the bill, Mr. Mansfield and Mr. Pemberton claiming in his behalf that the object of the bill was idle curiosity; that no creditor had a right to make these inquiries. During the argument the lord chancellor, throwing out suggestions, says:

"It seems admitted that they have a right to come here for a discovery where the property is, in order to make their judgments available. That, certainly, will not affect real property had before the judgment was obtained, if no longer under such circumstances that the creditor can follow it; but it does not follow that he cannot, merely because it does not remain in the ownership of the debtor, for there may be many cases in which he might. There is a material charge in this bill,—that if there was any conveyance it was without consideration."

There is no positive averment in the bill that there was a conveyance made by the defendant; but it alleges that, if there was a conveyance, it was made without consideration; and that, the lord chancellor says, is a material charge. He then proceeds to say:

"First, in the common case, will a bill for a discovery lie, with all this particularity, to know every estate he has sold and disposed of for three years? If so, he may go back forty years."

He then remarks:

"There is difficulty upon the objection that this would extend to an estate parted with forty years ago, without consideration; and I am not quite clear that such a bill must not allege that at a given time the defendant was seised

of given lands, (not simply suggesting, as a fishing bill, that at some time or other he had some land;) and that he has conveyed these lands away fraudulently, to put them out of the reach of his creditor."

These remarks quoted were made by Lord ELDON during the argument; and he took the case under consideration, and on the 20th of March he overruled the demurrer, saying:

"The bill is met by a defense, admitting that it is a proper bill, and the answer does not negative all that is material to be answered. With respect to the nature of the qualification, if he had said the property he gave into the house of commons was not liable to execution, the court ought to be content with that, without requiring from him more particularity. But the bill charges that the defendant delivered in a schedule of the particulars of the estates, whereby he made out his qualification, and that he has conveyed them without consideration, as evidence that he has lands liable to execution, as 'hey may be unquestionably. Upon that I think he must answer."

In this case of *Mountford* v. *Taylor*, Lord Chancellor ELDON held that the conveyance of his estate by the defendant without consideration was fraud; and that a creditor, as well as anybody else, might avail himself of it. In their bill the complainants in the case declare that they do not know the character of defendant's estates, nor where they are situated; but that he had, upon taking his seat as a member of the house of commons, delivered to the clerk or other officer a verified schedule in which his estate was set forth, which schedule the plaintiffs are unable to obtain. All of the allegations of the bill with respect to the defendant's property are argumentative. The complainants further alleged, however, that the defendant had conveyed his estate without consideration, and in trust to himself, and they were unable to find it. These allegations of this creditors' bill are as indefinite as could possibly be; yet the lord chancellor sustains the bill, and his decision in that case, as well as the decisions in the cases of *Hadden* v. *Spader* and *Donovan* v. *Finn*, referred to, and numerous other cases cited in those decisions, sustain the ground that, where the case presented is one of equitable jurisdiction, a creditor, as well as anybody else, is entitled to the aid of and redress from the court.

In the bill in the case at bar it is alleged that the respondent has converted a certain portion of his property, to the amount of $20,000, into cash, which he has concealed, with the intention of carrying it out of the United States; that he has other property to the amount of $90,000, which he has so arranged and concealed that he will be enabled to take it out of the United States; and that his express and declared purpose in so concealing and arranging his property, and in carrying out his intention of taking it away with him, is to fraudulently evade this complainant's execution.

This bill has been designated by the appellant's counsel as "fishing bill." What is meant by this term is indicated by Lord ELDON in the cited case of *Mountford* v. *Taylor*, in the previously quoted language, "not simply suggesting, as a fishing bill, that at some time or other he had some land," which was a remark thrown out during the argument. Such a bill is one in which there are no allegations of a definite or posi-

v.48F.no.7—32

tive character as to the defendant's having at any time owned property which could have been subject to execution upon the plaintiff's claim, or one asking for a discovery as to matters which cannot in any way affect the rights of the parties. It is evident, from the way he uses the expression, that it is to cases of that class that Lord ELDON refers. In that case it is alleged in the bill that, at a certain time, the defendant did have some property, which property he had since conveyed, if conveyed at all, without consideration, in trust for himself; and, although the complainants are unable to state where the property of the defendant is, the lord chancellor does not consider the bill a fishing bill, but overrules the demurrer, and compels the defendant to answer with reference to that particular property.

The nature of a fishing bill is defined by Chancellor KENT (then a judge of the court of errors of New York) in the case of *Newkirk* v. *Willett*, 2 Johns. Cas. 413, in which he says:

"The bill does not state sufficient equity to entitle the appellants to a discovery. It states, generally, that the respondent had made a demand upon one of the appellants, as executrix of Peter Schuyler, deceased, and that, as he did not produce any voucher, she had refused to pay him. It states, further, that he proposed an arbitration, which she refused; and that finally he had brought a suit against the appellants in the supreme court. The bill states, further, that the appellants knew nothing of the demand of their own knowledge, but that they believe it unjust, because the respondent took no measures to liquidate and settle it in the life-time of Peter Schuyler, and does not now produce any vouchers, and has been inconsistent in what he has from time to time said as to the nature and extent of his demand. This is the substance of the bill. It amounts to this: 'The respondent has sued us at law, and we do not know for what, and therefore we ask for a discovery beforehand, although we have reason to conclude he has sued us upon some groundless pretense.' Such a bill shows no equity; no right to a discovery. It sets forth no matter material to a defense at law, and which can be proven, unless by the confession of the opposite party. It is, to use Lord Chancellor HARDWICKE's expression, a mere 'fishing bill,' seeking, generally, a discovery of the grounds of the respondent's demands, without stating any right to entitle them to it. Such a bill may be exhibited by any executor or administrator, and, indeed, by any defendant, who is not already in possession of the plaintiff's proofs. But the court of chancery has wisely refused to sustain bills for discovery in such latitude, and unless the party calling for a discovery will state some matter of fact material to his defense, or which he wishes to substantiate by the confession of the defendant, the court will not enforce a discovery."

It is with this same view, as I understand it, that Lord ELDON, in the case before cited, alludes to a discovery of matters running back 40 years,—matters which cannot, by any possibility, affect the rights of the parties,—and a bill asking for such a discovery is a fishing bill. But as to a bill for a discovery of matters of such character and date that they can be immediately connected with the complainant's cause, and which matters he could not discover or ascertain without the aid of the court, the bill also alleging that, since the accruing of complainant's right, the respondent has conveyed away his estates, without consideration, and in trust for himself, such a bill is not a fishing bill, because

it sets forth matters material to the cause. A conveyance of the character alleged would be a fraud in law, and the complainant is entitled to a discovery.

In the present case, the charge of fraud is direct. In his bill, after setting forth that he has recovered judgment as against the respondent for a large sum of money; that execution has issued, and a return of *nulla bona* has been made thereon,—the complainant avers that a short time before the rendition of judgment, and during the pendency of the action, the respondent disposed of and converted into cash real property to the amount of $20,000; that since the rendition of the judgment he has secretly transferred a large part of his property, and has secreted the remainder; that he has property to the value of $90,000, which the complainant has been unable to reach by execution; that he intends and is about to convert into cash all his property, and to depart, taking it with him, beyond the jurisdiction of the court; and that all these acts and steps have been committed, taken, and proposed with the declared purpose of so "fixing" his property that it cannot be seized to satisfy the judgment, and to defraud the complainant of the money due under it. Those matters are material. Here is set forth the fraud which the complainant is seeking to unveil; and, if the alleged state of facts exists, he is entitled to apply the funds of the respondent, wherever they are, to the satisfaction of the judgment. The fact that the complainant is unable to describe and locate the property and funds of the respondent ought not to make it impossible to bring his cause within the jurisdiction of a court of equity, for under existing laws it is possible for a party to hold property in such a manner that only by a discovery can another be enabled to locate or describe it. If, in a case of this kind, a complainant were not entitled to a discovery, it would be possible for a debtor to conceal his property, or to convert it into money and put it in his pocket, and so evade a judgment. The arm of the court of equity would certainly be very short if it could not reach the respondent in such a case, although the complainant would be unable to describe the property or identify the money. In the nature of things it is impossible to identify the money. But if this respondent has in his possession the $20,000 which he is alleged to have received for that portion of his property which he has sold, and other property as well, he is bound to discover it, and yield it up, that it may be applied to the satisfaction of the judgment. If, as is averred in the bill, the respondent in this case has converted a portion of his property into money, and intends to carry that money and his other property beyond the jurisdiction of the court, then this bill is sufficient.

Another point is made in this case, with reference to the issuing of a writ of *ne exeat republica.* Respondent's counsel contends that the court has erred in directing in its decree that the writ should issue; that such a writ is only a provisional remedy, the right to which expires upon the determination of the suit and the entry of judgment. The very object of this provisional remedy is to secure the presence of the party in

order that the judgment may be executed,—in order that he may not be able to evade it. This writ is not discharged any more than an attachment is discharged upon the entry of judgment. A writ of attachment is discharged upon the satisfaction of the judgment or upon giving security; and the writ of *ne exeat* should continue in force until the judgment is satisfied, or until the writ is dissolved, or proper security given. *Mitchel* v. *Bunch*, 2 Paige, 606; *McNamara* v. *Dwyer*, 32 Amer. Dec. 631.

It is claimed by the respondent's counsel that that portion of the decree which directs that this writ shall issue is arbitrary; that no limit is placed upon the length of time it shall continue in force. I presume the court will have power to control that matter. The decree may possibly be too broad in that regard; and, if counsel desire it, it can be so modified as to obviate any objection upon that ground. That this writ may be issued even after judgment is established, see *Moore* v. *Hudson*, 6 Madd. 218; *Elliot* v. *Sinclair*, Jac. 545; *Collinson* v. ————, 18 Ves. 353; *Russell* v. *Ashby*, 5 Ves. 96. According to Daniell's Chancery Practice, and many authorities, a prayer in the bill for a *ne exeat* is not necessary. 3 Daniell, Ch. Pr. 1936; *Dunham* v. *Jackson*, 1 Paige, 629; *Gibert* v. *Colt*, 14 Amer. Dec. 561, note. It is sufficient if the facts alleged in the bill and established show a proper case for the writ, and it may be granted in the decree under the prayer for general relief; or the facts may be shown, and the writ applied for upon a petition presented in the case either before or after judgment or decree. The limitation of equity rule 21 only applies where the writ is asked for "pending the suit."

"And it is further ordered, adjudged, and decreed that the writ of *ne exeat republica* of the United States of America issue out of and under the seal of this court, to restrain the said Harris Lewis from departing out of the jurisdiction of this court." That is the form of that portion of the decree relating to this matter. I think it would have been better, and it certainly would have avoided criticism, if to this had been added, "until the satisfaction of the decree or the further order of the court." Respondent's counsel cites a case in 2 Wash. C. C. (*Gernon* v. *Boecaline*, page 130) to show that a district court has no authority to issue a writ of *ne exeat*. In that case, however, the writ was issued by the judge, and not by the court. That case arose at a time when the jurisdiction of the district court was limited, and did not cover a case of the character of that now under consideration at all. There is a distinction between the judge and the court,—a distinction recognized in the Revised Statutes. Section 717 reads:

"Writs of *ne exeat* may be granted by any justice of the supreme court in cases where they might be granted by the supreme court, and by any circuit justice or circuit judge in cases where they might be granted by the circuit court of which he is judge. But no writ of *ne exeat* shall be granted unless * * * satisfactory proof is made to the court or judge granting the same that the defendant designs quickly to depart from the United States."

By Rev. St. § 716, it is provided that "the supreme court and the circuit and district courts shall have power to issue writs of *scire facias.* They shall also have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the usages and principles of law." The writ of *ne excat* is one of the writs necessary to the exercise of the present jurisdiction of the district court. The jurisdiction of that court has been enlarged since the adoption of these statutes, and since the date of the decision last referred to. In cases of the character of the one at bar, it has now concurrent jurisdiction with the circuit court. The authority of the district court to issue this writ is therefore unquestionable. The decree of the district court must be affirmed, except that, if the appellant so elects, it may be modified in the respect indicated.