## THOMAS OWINGS, Trustee *vs.* CHARLES C. RHODES.

*Bill of Interpleader and Proceedings thereunder—Effect of the Preliminary decree—Final decree—Proceedings for Enforcing it—Liability of Trustees for Unauthorized payments of Money—Costs.*

From the very nature of the procedure, under a bill of interpleader, there must be a preliminary decree so that the co-defendants may have an opportunity to properly present their conflicting claims, and support them by the introduction of evidence which may form the foundation for the final determination of the Court in regard to their respective rights.

By such decree the Court cannot undertake to determine the validity of the claims in controversy, before all the evidence in support of those claims has even been adduced and considered.

Where by such decree the claims of the co-defendants were referred to the auditor with directions to take testimony; and the auditor subsequently filed his report and account, in which, among others, a claim of one of the defendants was allowed; and the Court finally ratified the report; such order of ratification is a decretal order operating as a final adjudication, and determination of the questions involved in the litigation then pending.

The passage of such order had the effect of a final decree and determined the rights of the respective parties.

When the rights of the parties to a suit, which had its inception in a bill for an interpleader, have been determined by a final decree, the determination of the Court may be enforced by the institution of new proceedings growing out of the original suit which has been ended.

The rule is well settled in this State and in England, that when there has been an unauthorized payment of funds held in a fiduciary capacity, the loss must fall on him who thus makes the payment, and not on an innocent party.

The preliminary decree under a bill of interpleader filed by an executor, appointed a trustee to receive from the executor the sum of $4000, bequeathed by the testator to P. for life, with remainder

Owings *vs.* Rhodes.

over, *and to pay over the income therefrom to P. during her life,* and at her death to distribute the principal in conformity with the provisions of the will. The decree also referred the claims of all the other parties to the cause to the auditor with directions to state an account showing the balance remaining after such payment in the hands of the executor, and its distribution among the various claimants. Besides her life interest in said legacy of $4000, P. was also the residuary legatee under the will. One of the claims allowed by the auditor, whose report and account were finally ratified, was a mortgage claim of one of the defendants, upon the interest of P. under the will of the testator; and the auditor stated in his report that *it appeared to him that the mortgage covered the interest payable to P. arising from the fund then in the hands of the trustee appointed under the decree.* A petition of said mortgage claimant afterwards filed against said trustee and P. asking that the income received from the investment of said legacy of $4000, be paid by the trustee to the petitioner in satisfaction of his mortgage claim, was resisted by the trustee upon the ground, among others, that he had already paid over the whole of the income received by him in manner and form as directed by the decree. On appeal from a decree passed upon said petition, directing the trustee to pay the income received by him to the petitioner, and imposing a portion of the costs of the petition upon the trustee, it was HELD:

1st. That the trustee ought to have known that when the Court had finally ratified the auditor's report and account which allowed the claim of the petitioner, he was not authorized to pay the income to any one else until that claim had been satisfied.

2nd. That the trustee, who was not a party interested in the former suit, but a mere stakeholder with respect to the funds, having refused to pay the money found to be due to the petitioner, there was no error in the decree of the Court below requiring him to make such payment.

3rd. That the disposition made of the costs by the Court below furnished no ground for disturbing the decree.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court. The interlocutory decree of the 9th of December, 1882, therein referred to, is as follows:

"It is, this 9th day of December, 1882, adjudged, ordered and decreed, that Thomas Owings, Esqr., be, and he is

hereby, appointed trustee, to receive from the complainant the sum of four thousand dollars, with interest, and securely invest the same, paying to the respondent, Josephine Plummer, the income thereof during her life, and after her death to pay her funeral expenses out of the principal, and divide the balance between the Baltimore Humane Impartial Society and Aged Women's Home, and the Home of the Aged of the Methodist Episcopal Church of Baltimore City, in the proportion of one-third to the Humane Impartial Society and Aged Women's Home; one-third to the said Society for their Aged Men's Home, and one-third to the Home of the Aged of the Methodist Episcopal Church of Baltimore City; and before acting as such trustee, he give to the State of Maryland a bond in the sum of eight thousand dollars, ($8000,) with sureties to be approved by the Court, conditioned for the faithful performance of the said trust."

"And it is further ordered and decreed, that the complainant pay to the said trustee the said sum of four thousand dollars, with interest, and that the claims of all the other parties to the cause be referred to the auditor, with directions to state an account, showing the balance remaining, after such payment, in the hands of the complainant, and its distribution among the various claimants, and with leave to all parties to take testimony before the auditor in support of their respective claims; and that the solicitors for the complainant, and for the respondent, Josephine Plummer, be first each allowed the sum of $100.00 as compensation for their services herein."

The cause was argued before ALVEY, C. J., YELLOTT, ROBINSON, and BRYAN, J.

*Charles J. Bonaparte,* for the appellant.

The decree of December 9th, 1882, whatever its merits or defects, was unquestionably a *final decree* so far as the

$4000 was concerned. It directed the executor to pay that sum to the trustee ; directed the trustee what to do with the income and the principal; determined who should share in the enjoyment of either, and left absolutely nothing undecided as to this subject-matter. It referred to the auditor the questions only of what balance remained after such payment in the hands of the executor, and how that balance should be distributed among the various claimants.

This decree, if erroneous, was subject to appeal; if improvidently passed, it could be corrected during the term, upon petition. After the term it became enrolled and beyond the control of the Court, except through a bill of review or original bill for fraud, or malpractice ; and, until so corrected, it determined absolutely the rights of all the parties to the cause as to its subject-matter. *Thruston vs. Devecmon,* 30 *Md.,* 210, 217 ; *Downes vs. Friel,* 57 *Md.,* 531, 534, 535 ; *Trayhern vs. National Mechanics Bank,* 57 *Md.,* 590, 598.

Such being the effect of the decree, the auditor's expression of opinion, made as to a matter not referred to him, and after the term in which the decree was passed, could have no possible efficacy, either to determine its construction or to modify its effects. The auditor is a mere ministerial officer, without any judicial functions. *Dorsey vs. Hammond,* 1 *Bland,* 469 ; *Field vs. Holland,* 6 *Cranch,* 21.

*George R. Gott,* for the appellee.

YELLOTT, J., delivered the opinion of the Court.

This is an appeal from a decree passed by the Circuit Court of Baltimore City. As disclosed by the record, one Fayette Plummer, by his last will and testament, did " give and devise " to his wife, Josephine Plummer, the income from four thousand dollars during her life, and

after her death, the principal is to be divided among certain charitable institutions in said will designated. There are several legacies bequeathed to other parties, and then all the residue of the estate, real and personal, is given to the said Josephine. Of this will, George W. Lindsay was appointed executor, with power "to sell all and any" of said property.

The widow of the testator, being indebted to one Frank Welsh to the amount of seven hundred dollars, executed a mortgage of all her interest in the estate of the testator, and Welsh assigned this mortgage to Charles C. Rhodes. The validity of this mortgage being subsequently disputed, and there being other claims against the said Josephine, the executor filed his bill of complaint, alleging that the Orphans' Court had decided that it had no jurisdiction to determine the matters in controversy, and asking that the parties be decreed to interplead, so that their respective rights might be heard and determined.

The proper pleadings were then filed in regular procedure, and by a decree, passed on the 9th of December, 1882, the Court appointed the appellant, Thomas Owings, trustee to receive from the said executor the sum of four thousand dollars, with interest, to be securely invested in conformity with the provisions of the will. The decree also directed the executor to pay over the said sum of four thousand dollars, with interest, to the trustee, thus appointed, and referred the claims of all the contesting parties to the auditor, with directions to state an account. An account was stated by the auditor in accordance with these directions, and was on the 7th of March, 1883, finally ratified and confirmed.

The auditor's account, which was thus finally ratified and confirmed, adjusted the matters in controversy between the litigating parties and allowed the claim of the appellee. It is manifest that the decree passed on the 9th of December, 1882, was merely interlocutory. It

Owings *vs.* Rhodes.

must be borne in mind that the property was in the hands of an executor; that the Orphans' Court had determined that it had no jurisdiction; and that the interposition of a Court of equity had been invoked so that it might be decreed that the parties to the controversy should interplead. The bill for an interpleader was filed on the 14th of January, 1882, and the parties defendant having subsequently answered, the Court, on the 9th of December, in the same year, passed the decree in question. This decree was necessarily interlocutory because, from the very nature of the procedure, there must be a preliminary decree so that the co-defendants may have an opportunity to properly present their conflicting claims and support them by the introduction of evidence which may form the foundation for the final determination of the Court in regard to their respective rights; this being the relief which the plaintiff, who has no pecuniary interest in the contest, asks for in his bill for an interpleader. To this relief he is clearly entitled, and, therefore, it becomes the duty of the Court to pass a preliminary decree. As was said by Lord LOUGHBOROUGH in *Langston vs. Boylston,* 2 *Ves. Jr.,* 108, 109.

"A party, claiming no right in the subject, is doubly vexed by having two legal processes in the names of different persons going on against him at the same time. He comes upon the most obvious equity to insist, that those persons, claiming that to which he makes no claim, should settle that contest among themselves, and not with him."

The Court by its preliminary decree substituted its own trustee in the place of the executor, and thus assumed control by ordering a transfer of a portion of the property in dispute. It could not undertake to determine the validity of the claims in controversy before all the evidence in support of those claims had even been adduced and considered, and any construction of the peculiar phraseology of a portion of this decree which tends to give it a differ-

ent effect and operation must be rejected.    The Court referred the claims of the co-defendants to the auditor, with directions to take testimony, and on the 23rd of February, 1883, the auditor filed his report and account, in which, among other claims, he allowed that of the assignee of the mortgage.    On the 7th of March, 1883, the Court finally ratified and confirmed the report and account, and the order then passed was undoubtedly a decretal order and operated as a final adjudication, and a determination of the questions involved in the litigation then pending as, under the pleadings and issue, it was impossible for the parties interested to carry the controversy any farther in that Court.    *Contee vs. Dawson,* 2 *Bland,* 264; *Lee vs. Adm'rs of Boteler & Belt,* 12 *G. & J.,* 323.

The passage of this order had the effect of a final decree and determined the rights of the respective parties. But the appellant in the pending appeal was no party to that cause.    The funds in dispute had been placed in his hands by the passage of the interlocutory decree.    When the procedure is by interpleader, the person holding the property in controversy has been aptly compared to a stakeholder.    He has not, and cannot properly have, any interest in the issue, whatever it may be, and, having no interest, cannot be affected by the final decree.    *Langston vs. Boylston,* 2 *Ves. Jr.,* 109 ; *Bedell vs. Hoffman,* 2 *Paige,* 199.

But when the rights of the parties to a suit, which had its inception in a bill for an interpleader, have been determined by a final decree, it may, at some period subsequent to the passage of the decree, become necessary to enforce the determination of the Court; and this may be done by the institution of new proceedings growing out of the original suit which has been ended.    And it is evident that the institution of these proceedings cannot be prevented by the enrollment of the decree in the original suit, as persons who were not parties to the former suit

may be brought in and be affected by the new proceedings. It was said by Lord CRANWORTH in *Lyne vs. Pennell,* 1 *Simons, N. S.,* 113, "that as a defendant to an interpleading suit, stood, after a decree, in the anomalous situation of plaintiff as well as defendant, he might file a supplemental bill for the purpose of bringing a new defendant before the Court, without making the other parties to the original suit parties to it, as a plaintiff in an ordinary suit might do."

The right of the appellee to a certain sum of money had been determined by the Court. But this money was not in the hands of any of his co-defendants. It was in the hands of the appellant, who was no party to the proceedings which were terminated by the final decree. The appellee certainly had the right to institute proceedings to obtain the benefit of this decree. A course of procedure analogous to that indicated by the Vice-Chancellor in *Lyne vs. Pennell,* was therefore proper and expedient, and this course has been pursued by the appellee, and was the most effectual remedy which he could have invoked as the stakeholder having the funds in his possession, was the trustee of the Court and subject to its supervision and control.

The appellee filed his petition on the 28th of October, 1884, and in it refers to the action of the Court in ratifying the auditor's account, which allowed his claim as assignee of the mortgage, and avers that there is an unpaid balance which the appellant has refused to pay. This petition is answered by the appellant, who, in his answer, denies the right of the appellee to the sum claimed by him; and avers that he, the said appellant, has paid over the whole of the income, received by him, in manner and form as directed by the decree appointing him trustee. He avers and contends that the rights of all parties to the cause, and the duties and liabilities of the trustee were finally fixed and determined, so far as the fund of

$4000, and the income and proceeds thereof are concerned, by the decree of the 9th day of December, 1882.

Now, as was decided by this Court in *Barth vs. Rosenfeld*, 36 *Md.*, 604, "a decree passed upon the filing of a bill of interpleader, ordering the complainant to pay the money into Court, and requiring the defendants to interplead and answer, is interlocutory, settling the rights of no party, and is at all times prior to a final decree, subject to revision and alteration, being merely auxiliary to further proceedings, and does not require a bill of review to vacate, amend or rescind the same."

The decree in question did not, as has already been intimated, determine any of the rights involved in litigation, and that portion of it, which is supposed to be a clerical error, is a mere copy or reproduction of the provisions of the will, and was inserted because the sum due the assignee of the mortgage was to be paid out of the income arising from the fund of $4000 placed in the hands of the trustee who was, after satisfaction of the mortgage, to pay the income to Josephine Plummer until her death, when he was to distribute the principal among the recipients of the testator's bounty just as the executor had been required to do, and in whose place the trustee had been substituted. But surely the trustee ought to have known that when the Court had finally ratified and confirmed the auditor's report and account, which allowed the claim of the appellee, he was not authorized to pay the income to any one else until that claim had been satisfied.

The rule is well settled in this State and in England, that when there has been an unauthorized payment of funds held in a fiduciary capacity, the loss must fall on him who thus makes the payment and not on an innocent party. Referring to such payments made by executors, Lord REDESDALE said, "I have no doubt the executors meant to act fairly and honestly, but they were misad-

vised; and the Court must proceed, not upon the improper advice under which an executor has acted, but upon the acts he has done. If, under the best advice he could procure, he acts wrong, it is his misfortune, but public policy requires that he should be the person to suffer." *Doyle vs. Blake*, 2 *Schoale & Lefroy*, 243.

This rule has received the sanction of the Courts of equity in Maryland, and numbers of cases might be cited in which it has been rigidly enforced. *Green vs. Putney*, 1 *Md. Ch. Dec.*, 262; *Murray vs. Feinour*, 2 *Md. Ch. Dec.*, 418.

The decree of October 27th, 1885, from which this appeal has been taken, adopted the former determination of the Court, and it is manifest that the nature of the questions involved in this controversy constrained the learned Judge who passed this decree to refer to the former adjudication. The trustee, who was not a party interested in the former suit, but a mere stakeholder with respect to the funds, having refused to pay the money found to be due to the assignee of the mortgage, the subsequent proceedings were instituted to enforce payment. The Court decreed that this money should be paid by the appellant to the appellee. There was no error in this determination. The Court also made an adjustment of the costs, and the appellant urges that there is error in imposing certain costs growing out of these proceedings on himself, and contends that this is also a good ground for a reversal of the decree. But it has been decided by this Court that,

"Courts of equity in this State always exercise a discretionary power upon the subject of costs, and if the decree is, in other respects right, it will not be disturbed even if, in the judgment of this Court, there was an improper direction as to the party or fund charged with their payment." *Hamilton vs. Schwehr*, 34 *Md.*, 117; *Columbia Build. Asso. No. 4 vs. Crump*, 42 *Md.*, 195.

27  v. 65.

From what has been said, it follows that the decree of the Court below should not be disturbed.

<div align="right">

*Decree affirmed,*
*with costs to the appellee.*