## SHAINWALD et al. v. LEWIS.

(District Court, N. D. California. August 14, 1895.)

### No. 260.

**1. Equity—Jurisdiction—Ancillary Suits.**

One S., assignee in bankruptcy of the firm of S. C. & Co., brought suit against one L. to set aside certain fraudulent conveyances, and obtained a decree setting the same aside, requiring L. to pay over to S., as assignee, a sum of money, and adjudging that L. held in trust certain moneys and property of the bankrupt firm. Within five years of the rendition of this decree, that being the limitation of the local statute for suits upon judgments, S. filed another bill to revive and continue the former decree, and obtained a decree reviving and continuing it in full force and effect, except as to certain sums already paid. Within five years from the rendition of this decree, S. filed a third bill, styled a "bill of revivor and supplement," to revive and continue in force the two former decrees. *Held* that, although S. might have a remedy at law, equity had jurisdiction to entertain the bill either as an ancillary bill for the enforcement of its original decree or by virtue of the trust declared to attach to the funds in the hands of L.

**2. SAME—PLEADING.**

*Held,* further, the bill being in substance one to revive and carry into execution the former decrees, and containing proper allegations for that purpose, equity could entertain it, whether properly or not styled a "bill of revivor and supplement."

**3. SAME—LACHES.**

*Held,* further, that the bill was not barred either by laches or by the statute of limitations.

**4. SAME—SECOND' REVIVOR.**

*Held,* further, that the bill properly sought to revive the first decree of revivor, and thereby, ipso facto, the original decree; and the fact that the original decree was not set out in hæc verba in the first decree of revivor was no objection to the present bill, it having been intelligibly referred to and described.

**5. EQUITY PRACTICE—NE EXEAT—DEMURRER.**

The question of the propriety of issuing a writ of ne exeat cannot be raised by demurrer.

This was a suit by Herman Shainwald, as assignee in bankruptcy of the firm of Schoenfeld, Cohen & Co., and of Louis S. Schoenfeld, Simon Cohen, and Isaac Newman, individually, against Harris Lewis, to revive and continue in force two decrees rendered in favor of the same plaintiff against the same defendant on November 5, 1880, and on June 14, 1890, respectively. The defendant demurred to the bill, and excepted to certain parts of it.

Sidney McMechen Van Wyck, Jr. (James L. Crittenden, of counsel), for complainant.

Wal. J. Tuska, for respondent.

MORROW, District Judge. The bill in equity in this case seeks to revive, continue, and enforce a judgment and decree of this court, rendered on June 14, 1890 (46 Fed. 839), in case No. 241. This last decree had revived and continued in force a judgment and decree made in an original suit, No. 221, on November 5, 1880 (6 Fed. 753). This is, therefore, the second suit which has been brought to revive and continue in force the judgment originally rendered in case No. 221 in favor of the complainant. There is no change of parties or of their interest. This bill and the proceedings under it must be regarded, therefore, as merely ancillary and supplementary to the original suit in case No. 221 and the subsequent ancillary suit in case No. 241.

That the nature and scope of the present bill, as well as the relief originally afforded by the former judgments of this court, and now sought to be enforced, may be the better understood, it will be necessary to refer to the early history of the proceedings out of which the present action has taken rise. During the years 1875, 1876, 1877, and the early part of 1878, a copartnership under the firm name of Schoenfeld, Cohen & Co. was engaged in a mercantile business in San Francisco, selling willow ware, fancy goods, toys, and notions. On the 26th day of April, 1878, Louis S. Schoenfeld and Simon Cohen, members of this copartnership, filed their petition in this court to be adjudicated bankrupts, as copartners and as individuals, and to be discharged from their debts, under the bankrupt act. The petition sets forth that Isaac Newman, a member

of the copartnership, had refused to join in the petition, and it was asked that he be made a party to the proceedings. In a schedule annexed to the petition, the debts of the copartnership were set forth, amounting to $44,257.25, and in another schedule, purporting to contain an inventory of the estate of the copartnership, it was alleged that "one H. Lewis has in his possession mines, property, and accounts due the firm of Schoenfeld, Cohen & Co., the value of which is $68,989.18, said property, money, and accounts having been obtained by fraud on the part of the said Lewis, and held adversely to said firm." It was also stated in this petition that the accounts, books, and papers of Schoenfeld, Cohen & Co. were in the possession of the said H. Lewis. No other property or assets of any kind or description belonging to either the firm or to its individual members appeared in the petition or schedule. In other words, the petition alleged that the entire property of this copartnership, together with all the books of accounts and papers, had passed into the hands of one H. Lewis, who had obtained the same by fraud. The petition was referred to the Register in bankruptcy, and on December 6, 1878, Louis S. Schoenfeld, Simon Cohen, and the firm of Schoenfeld, Cohen & Co. were adjudicated bankrupts, individually and as copartners. The first meeting of creditors was held on March 29, 1879, when Herman Shainwald, of San Francisco, was chosen assignee of the estate. He qualified on April 7, 1879, and immediately entered upon the discharge of his duties as such assignee. On October 3, 1879, Shainwald, as assignee, filed a bill in equity in this court against Harris Lewis (the party referred to as H. Lewis in the petition in bankruptcy) for the purpose of having a certain judgment, execution, sheriff's sale, and other proceedings in a suit at law in the Nineteenth district court of this state, entitled "Harris Lewis vs. Louis S. Schoenfeld, Isaac Newman, and Simon Cohen," declared to be a fraud upon the creditors of the firm of Schoenfeld, Cohen & Co., and upon the assignee of such firm in bankruptcy, and upon Simon Cohen, and upon said firm; also, for the purpose of having it declared and decreed that certain promissory notes, upon which the said suit was brought, to wit, a note for $17,000, a note for $8,000, and a note for $5,000, were fraudulent and void, as against said firm, for want of consideration; also, for the purpose of having it declared and decreed that certain transfers of money, bills of lading, promissory notes, and other property made to Harris Lewis by said Schoenfeld and Newman were fraudulent and void, as against the creditors of said firm, the assignee, and Simon Cohen, a member of said firm; and also for the purpose of having it declared and decreed that Harris Lewis was a trustee for the benefit of the assignee of all the moneys, bills of lading, accounts, merchandise, chattels, and other property obtained by said Lewis through or by means of the said action, attachment, judgment, execution, or sheriff's sale, or transferred or delivered to or received by him from said Schoenfeld, from said Newman, or from any other person; and, also, for such further and other relief, etc.; also, for an injunction and a writ of ne exeat. This case is No. 221 in the records of this court, and is so designated to dis-

tinguish it from other actions between the same parties. Though the suit was brought subsequently to the repeal of the bankrupt law (Act June 7, 1878; 20 Stat. 99), the right to sue was within the proviso of the repealing act saving all further proceedings in any pending bankruptcy matter. Other suits have also been instituted against persons other than Harris Lewis, who had participated with him in fraudulently obtaining the assets of said firm. The litigation involved in these suits has been complicated, bitter, and protracted, engaging the attention of this court, in some form or another, for now 16 years past.

The testimony taken in the original suit (case No. 221) disclosed a series of fraudulent transactions devised and executed for the purpose of enabling the firm of Schoenfeld, Cohen & Co. to defraud its foreign and Eastern creditors out of the several amounts due them, aggregating more than $30,000. It appears that in January, 1877, it was determined between Schoenfeld and Newman that Schoenfeld should proceed to the Eastern states and Europe and procure a large stock of goods on credit. In this he was successful. Returning to San Francisco in June, 1877, Newman reported the firm in an embarrassed condition, whereupon certain fraudulent notes, amounting to about $30,000, were executed by Newman and Schoenfeld in the name of the firm, and placed in the hands of Harris Lewis, to enable him to wreck the concern by bringing an attachment suit against the firm in the state court. This suit was accordingly commenced June 27, 1877, and the property in the hands of the firm attached. An attorney was employed for the ostensible purpose of defending the suit, but the real purpose was to enable Lewis to obtain judgment and execution in the case, and a sale of the property of the firm, and this purpose was in fact accomplished. Lewis, by an arrangement, became a purchaser at the sheriff's sale of a large part of the merchandise and accounts of the firm at a very low price, whereupon he opened a store with this stock in another part of the city, in the name of H. Lewis & Co. Schoenfeld and Newman were, however, connected with this new store under an agreement to divide the proceeds after certain claims had been paid. It does not appear that Mr. Cohen was a party to this conspiracy, or knew the character of the transactions involved in its execution. The amount realized by H. Lewis & Co. from this property, near the end of the year 1877, was about $69,000. It appears that, after this fraudulent scheme had been so far consummated that Harris Lewis had become possessed of almost the entire assets of the firm, he repudiated an obligation which, it is claimed, he assumed as a part of the conspiracy, and, as a result of the dissensions growing out of this affair, proceedings in bankruptcy were instituted. In commenting on the testimony relating to these transactions, the late Judge Hoffman said:

"It is perhaps not easy to imagine a grosser case of conspiracy by merchants of fair repute to cheat and defraud their creditors, or one where the proofs could be more convincing and indisputable." 6 Sawy. 556, 557, 6 Fed. 753.

In this case (No. 221) Judge Hoffman, on November 5, 1880, after a careful consideration of all the evidence in the case, directed a decree to be entered in favor of Shainwald, as assignee of the estate of Schoenfeld, Cohen & Co., bankrupts, and against Harris Lewis, for the sum of $81,425.07, with interest in the amount of $17,099.26, making a total of $98,524.33. The judgment and decree in No. 221 remaining unsatisfied, the complainant exhibited his bill on November 2, 1885, in case No. 241, to revive and continue in force his judgment in case No. 221, and, after proceedings duly had in this court, a judgment and decree was entered on June 14, 1890, whereby the judgment of November 5, 1880, in case No. 221, was continued "in full force and effect," excepting that the sum of $30,650, paid by one Hyams, and $20,000, paid by one Naphtaly, both of whom had been implicated in the combination and scheme to defraud, and had been proceeded against in another action, and also the further sum of $11,919.63, received by Ralph L. Shainwald, the receiver appointed by the court, were applied in part satisfaction of the original judgment for the sum of $98,524.33, with interest and costs, leaving a balance still due of $69,829.25, in which amount the court entered its judgment for complainant, with interest and costs. An injunction restraining Harris Lewis or any other person from disposing of or interfering with the trust funds decreed to be represented by the amount of the judgment was also granted, but the application for a writ of ne exeat was denied. To revive and continue in force this last judgment, and ipso facto that of November 5, 1880, the present bill in equity, styled by counsel for complainant "bill in revivor and supplement," has been filed. An injunction, as above, and a writ of ne éxeat, is also prayed for. A demurrer is now interposed to the bill. Exceptions also have been made to matters in the bill claimed to be scandalous and impertinent. Taking these objections up in their order, the main grounds of demurrer urged are that the complainant does not make, in and by his bill, such a case as entitles him to apply to a court of equity for the relief he seeks; that he has an adequate remedy at law; that his claim is barred by laches and the statutes of limitation of the state of California; that his bill is ambiguous and uncertain, in that it cannot be ascertained therefrom whether he seeks to recover on the decree of November 5, 1880, or on that of June 14, 1890, or on both.

In support of the first objection, it is claimed that the suit is to all intents and purposes for the recovery of a liquidated sum of money, viz. a money judgment, to accomplish which the complainant has an adequate remedy at law. Conceding that the sum sued for is a liquidated amount, and that a court of law could afford as complete and adequate a remedy, yet this, of itself, does not divest this court, as a court of equity, of its jurisdiction over the bill. For it is a well-settled maxim of equity jurisprudence that, where a court of equity obtains jurisdiction for one purpose, it will retain it for all purposes, and render complete justice, even though, in doing so, it is necessary to establish purely legal rights and grant legal remedies which would otherwise be beyond the scope of its

authority. The fact that the action is cognizable by a court of law does not, as a general rule, impair or divest the right of a court of equity, having once obtained jurisdiction, to entertain the suit. 1 Pom. Eq. Jur., pp. 211–214, §§ 181, 182; 1 Story, Eq. Jur. (11th Ed.) §§ 64k, 65, 71. In King v. Baldwin, 17 Johns. 384, Spencer, C. J., said:

"I consider it an established principle that where a court of equity once had jurisdiction it will insist on retaining it, though the original ground of jurisdiction—the inability of the party to recover at law—no longer exists. 1 Madd. 23. In Atkinson v. Leonard, 3 Brown, Ch. 218, Lord Thurlow said: 'It did not follow, because a court of law will give relief, that this court loses the concurrent jurisdiction it has always had; and, till the law is clear on the subject, the court would not do justice in refusing to entertain the jurisdiction.' "

Therefore, if a court of equity, having acquired jurisdiction for one purpose, may go on to a complete remedy, and adjudicate as to legal rights and grant legal remedies, a fortiori will it retain jurisdiction of purely ancillary and supplementary proceedings to enforce its own decrees. And it is immaterial whether the amount sued for is a liquidated money judgment, and that as complete and adequate a remedy could he had in a court of law. The remarks of Chancellor Kent in Kershaw v. Thompson, 4 Johns. Ch. 609, 612, though relating to the foreclosure of a mortgage and the possession of the mortgaged premises, are pertinent to the law of this case. He says:

"The distribution of power among the courts would be injudicious, and the administration of justice exceedingly defective, and chargeable with much useless delay and expense, if it were necessary to resort, in the first instance, to a court of equity, and afterwards to a court of law, to obtain a perfect foreclosure of a mortgage. It seems to be absurd to require the assistance of two distinct and separate jurisdictions for one and the same remedy, viz. the foreclosure and possession of the forfeited pledge. But this does not, upon due examination, appear to be the case; and it may be safely laid down, as a general rule, that the power to apply the remedy is coextensive with the jurisdiction over the subject-matter."

But it is to be observed that this suit is not an action merely to recover a liquidated sum of money, to wit, a money judgment, as counsel for respondent contends. It is something more. It is to revive and enforce the former judgments of this court, which adjudge that Harris Lewis holds in trust for the benefit of Herman Shainwald, the complainant and duly-appointed assignee in bankruptcy of the firm of Schoenfeld, Cohen & Co., and for the benefit of the creditors thereof, certain moneys and property of said firm adjudged to have been fraudulently procured and obtained by said Lewis, and now aggregating in value the sum of $69,829.25; and, furthermore, it is sought to give effect to and enforce the former judgments of this court by processes peculiar to courts of equity alone, as, for instance, enjoining Lewis and all others from in any way disposing of or interfering with such trust funds, and granting such other or further relief as to the court may seem proper. While it is true that the chief and ultimate object of this ancillary bill is to recover of and from the respondent the sum of $69,829.25, with interest and costs, yet the important feature must not be over-

looked that it is sought to compel the payment of this amount as so much trust funds in the hands of Lewis. There being an element of trust in the case, this feature alone would confer jurisdiction upon the court, sitting as a court of equity. Oelrichs v. Spain, 15 Wall. 211, 228.

However, aside from these considerations, which seem to place the question of jurisdiction beyond the peradventure of a doubt, there is still another and more convincing reason in favor of the jurisdiction of the court, and that is the inherent power of a court of equity to enforce its own decrees. Having the power to adjudicate, it must have the power to enforce its adjudications, or, in the language of Mr. Justice Field, then on the supreme bench of California, in the case of Montgomery v. Tutt, 11 Cal. 190, "where the court possesses jurisdiction to make a decree, it possesses the power to enforce its execution." Although the jurisdiction of this court, as a court of equity, is purely statutory, and limited to but few subjects, yet within the confines of such jurisdiction it possesses complete authority, and is vested with all the attributes of a court of chancery. It is a general and elementary rule that such courts have plenary power to issue all processes that may be necessary to carry their decrees or orders into effectual execution. 2 Daniell, Ch. Prac. (4th Ed.) p. 1042, note 7; Ludlow v. Lansing, 1 Hopk. Ch. 231; Charles River Bridge v. Warren Bridge, 6 Pick. 395; Jones v. Mill Corp., 4 Pick. 509; Grew v. Breed, 12 Metc. (Mass.) 363, 370, 371; Scott v. Jailer, 1 Grant, Cas. 237; White v. Hampton, 13 Iowa, 259; Root v. Woolworth, 150 U. S. 401, 410, 14 Sup. Ct. 136. That this inherent and plenary power extends to and includes the right to entertain bills to carry their decrees into execution is but a corollary to the above rule. The function of bills in equity for this purpose, and their utility, is well settled, and is peculiarly appropriate to courts of equity. They constitute, in effect, but continuations of the original suit. Story, in discussing these bills to carry decrees into execution, says in his work on Equity Pleading (Redfield's Ed. p. 394):

"Sometimes, from the neglect of parties, or some other cause, it becomes impossible to carry a decree into execution without the further decree of the court. This happens, generally, in cases where, the party having neglected to proceed upon the decree, their rights under it become so embarrassed by a variety of subsequent events that it is necessary to have the decree of the court to settle and ascertain them. Sometimes such a bill is exhibited by a person who was not a party, or who does not claim under any party to the original decree, but who claims in a similar interest, or who is unable to obtain the determination of his own rights till the decree is carried into execution. Or it may be brought by or against any person claiming as assignee of a party to the decree."

Precisely the same language is found in Mitf. Eq. Pl. (3d Ed., 1812) p. 86. See, also, 6 Am. & Eng. Enc. Law, p. 773, and references therein contained; 2 Daniell, Ch. Prac. (4th Am. Ed.) pp. 1585, 1586. In Owings v. Rhodes, 65 Md. 414, 9 Atl. 903, it was said:

"When the rights of a party to a suit which has its inception in a bill for an interpleader have been determined by a final decree, it may, at some period

subsequent to the passage of the decree, become necessary to enforce the determination of the court; and this may be done by the institution of new proceedings growing out of the original suit, which has been ended."

In Shields v. Thomas, 18 How. 253, 262, this language is used:

"Amongst the original and undoubted powers of a court of equity is that of entertaining a bill filed for enforcing and carrying into effect a decree of the same, or of a different court, as the exigencies of the case or the interests of the parties may require."

In Railroad Cos. v. Chamberlain, 6 Wall. 748, it appeared that a bill in equity had been filed to set aside a judgment, and a lease, in the nature of a mortgage, to secure the same, and another railroad corporation created by the same state, having become the equitable owner of the lease and mortgage, was admitted as defendant, and filed a cross bill to have the judgment enforced. The supreme court, through Mr. Justice Nelson, in reviewing and reversing the action of the circuit court in dismissing the cross bill, said:

"We think that the court erred in dismissing the cross bill. It was filed for the purpose of enforcing the judgment, which was in the circuit court, and could be filed in no other court, and was but ancillary to and dependent upon the original suit; an appropriate proceeding for the purpose of obtaining satisfaction."

See, also, Thompson v. Maxwell, 95 U. S. 391, 400; Chicago, M. & St. P. Ry. Co. v. Third Nat. Bank of Chicago, 134 U. S. 276, 10 Sup. Ct. 550.

In Root v. Woolworth, 150 U. S. 401, 410, 14 Sup. Ct. 136, the supreme court say:

"It is well settled that a court of equity has jurisdiction to carry into effect its own orders, decrees, and judgments, which remain unreversed, when the subject matter and the parties are the same in both proceedings."

After referring to the general rule on this subject as stated in Story, Eq. Pl., and applying that rule to the case at hand, the opinion continues:

"The jurisdiction of courts of equity to interfere and effectuate their own decrees by injunctions or writs of assistance, in order to avoid the relitigation of questions once settled between the same parties, is well settled. Story, Eq. Jur. § 959; Kershaw v. Thompson, 4 Johns. Ch. 609, 612; Schenck v. Conover, 13 N. J. Eq. 220; Buffum's Case, 13 N. H. 14; Shepherd v. Towgood, Turn. & R. 379; Davis v. Bluck, 6 Beav. 393."

Further citation of authority in support of the proposition is unnecessary. I have no doubt as to the jurisdiction of the court to entertain this bill to enforce its previous decrees and judgments.

The next point to be disposed of is whether the complainant's bill is in the proper form. Story, in his work on Equity Pleading, speaking of bills to carry decrees into execution, says:

"A bill for this purpose is generally partly an original bill, and partly a bill in the nature of an original bill, although not strictly original; and sometimes it is likewise a bill of revivor, or a supplemental bill, or both. The frame of the bill is varied accordingly." Section 432, p. 395 (Redfield's Ed.).

The bill is styled a "bill of revivor and supplement." An examination of its terms shows that it partakes of the nature of both. It seeks, in the first place, to revive a former judgment of this court,

and, in the second place, to carry such judgment into execution. In so far as the present bill is supplementary, it is unquestionably proper, for that is one of the recognized uses of supplementary bills. But it is claimed by counsel for respondent that, in so far as it is a bill of revivor, it is improper, for the reason that such an action can only be instituted upon the original suit. The bill appears to have precisely this character. It seeks to keep alive the original action, as has been done before, and is the exercise of that reasonable diligence required by courts of equity in the prosecution of demands. Section 336 of the Code of Civil Procedure of this state provides a period of five years within which an action may be commenced upon a judgment or decree of any court of the United States. To guard against any possible consequences resulting from the running of this statute, the present bill is filed to revive and continue in force the original action. In form and substance, discarding rigid and technical rules of equity pleading, it is a bill to carry a decree into execution. That is the object plainly deduced from the averments of the bill, and whether it be termed by counsel a "bill of revivor and supplement," or either one or the other, can and should make no difference, if the complainant is entitled to the equitable relief prayed for upon the showing made in his bill. The remarks of Wilde, J., in Grew v. Breed, 12 Metc. (Mass.) 363, are directly in point:

"The question is whether the decree mentioned in the bill, that the insurance company should pay four thousand four hundred and sixty-five dollars and eighty-four cents to C. P. and B. R. Curtis, solicitors of the plaintiffs in the former bill, can be now enforced against the said company and Andrew Breed, one of the defendants, their debtor. It is objected that, although the court had jurisdiction in the original suit, it is not extended to this suit, which is on a new bill. It is true that this is a new bill; and so are bills of revivor. But it is not strictly original."

After adverting to the nature of a bill to carry a decree into execution, the learned judge continues:

"But, however this bill may be denominated or defined, it is certainly founded on the decree of the court in the former suit; and the sole question is whether we have authority to cause it to be done in the form prayed for."

The authority to do so was affirmed, and the demurrer to the bill overruled.

It is next objected that the bill reviving the original action is barred by laches and the state statute of limitations as contained in sections 336 and 343 of the Code of Civil Procedure. So far as it appears from the pleadings, it would seem that the complainant, instead of being guilty of laches, has been at all times vigilant and diligent to protect and enforce his rights. The decree upon the original bill was filed November 5, 1880. Within five years thereafter, to wit, on November 2, 1885, the complainant commenced ancillary proceedings to revive and keep in force the former decree, and obtained a decree in his favor on June 14, 1890. Within five years after this last decree, to wit, on June 8, 1894, the bill at present under consideration was filed. This objection is, therefore, not well founded.

It is further claimed that the bill is ambiguous and uncertain, in that it does not appear which judgment the complainant is seeking to revive; that if he sues on, and seeks to revive, the judgment rendered on November 5, 1880, that is now dead, having been made more than five years next preceding the bringing of the present bill. On the other hand, it is claimed that if he sues on the judgment rendered June 14, 1890, that decree is too indefinite and insufficient for any purpose, and that the portions of the decree continued in force should have been set out in hæc verba in the decree of revivor. But these objections are without substantial merit. In the first place, the judgment and decree of November 5, 1880, is not dead. It was expressly revived and continued in force by the decree of June 14, 1890, in suit No. 241. The present suit is to revive and continue in force this last decree, thereby, in effect, so to speak, giving the decree of November 5th a new lease of life. The judgment which it is sought to enforce, the rights adjudicated upon, were determined in the original suit; but to keep this judgment alive, and to preserve the rights of the parties theretofore adjudicated, the ancillary bill, which resulted in the decree of June 14, 1890, in case No. 241, was filed. It would seem logical and proper, therefore, to revive this last decree, and thereby, ipso facto, that of November 5, 1880, in the original case No. 221. The objection that the decree sought to be revived is insufficient,— indefinite,—and that the portions continued in force should have been set out in hæc verba in the decree of revivor, is, as stated above, untenable. It is entirely unnecessary to set out the decree revived in hæc verba, provided a sufficient reference be made to it to show what decree it is intended to revive. The statement in the decree of June 14, 1890, "that the judgment heretofore rendered and entered on the 5th day of November, A. D. 1880, in the district court of the United States of America for the district of California, in an action numbered 221, wherein the complainant herein was complainant and the respondent herein was respondent, be and the same is hereby continued in full force and effect," is amply sufficient to justify a reference to the judgment and decree of November 5, 1880. It is a general rule that papers and documents which are sufficiently referred to and identified may be made part of a pleading. De Sepulveda v. Baugh, 74 Cal. 468, 16 Pac. 223, overruling other conflicting decisions; Rosenthal v. Matthews, 100 Cal. 81, 34 Pac. 624.

A demurrer is also made to that part of the bill which seeks and prays for a writ of ne exeat republica. I am of the opinion that the propriety of issuing such process cannot be raised by a demurrer, nor at this time. The contention is made that the bill is improper in this respect, for the reason that the decree of November 5, 1880, as revived by the decree of June 14, 1890, does not direct that such a writ shall issue; and the point is made that the office of a bill to enforce a decree is simply restricted to enforcing the decree as rendered, and that there can be no substantial variation of its terms, and that, therefore, the court in this case cannot issue such writ. Without entering into a consideration of this question, it is sufficient to say that the writ of ne exeat republica is not in itself a remedy. It is a means to effectuate a remedy, viz. by keeping a

party within the jurisdiction of the court. Rule 21 of the general equity rules of the supreme court required the complainant, if he required such writ "pending the suit," to ask for it in his bill. In the case of Lewis v. Shainwald, 7 Sawy. 403–417, 48 Fed. 492, decided in this circuit, it was held that the writ may be granted at or after the decree, although the bill contains no such prayer. However, it will be time enough to consider this question when it comes finally before the court.

There is no merit in the exceptions for matter claimed to be scandalous and impertinent. The demurrer will be overruled and the exceptions disallowed.