## LOUIS HENRI DE GALLARD, PRINCE DE BEARN ET CHALAIS vs. ROSS R. WINANS AND FERDINAND C. LATROBE, TRUSTEES, ET AL.

*Appointment by Will Under Power in Deed of Trust—Appointee Takes from Grantor in Deed—Law of Domicil of Grantor Governs in Construction of Deed and Will Executing the Power—Liability to Account of Person Receiving Property Under Erroneous Administration Account—Acquiescence of Legal Owner in the Account Not a Gift—Liability of Trustee Who Pays Fund to Person Not Entitled—Duration of Trust—Mistake of Law in Making Settlement Between Trustee and Cestui Que Trust—Administration Account and Release Annulled.*

When a deed of trust provides that the *cestui que trust*, having a life interest in the property conveyed, shall have the right to dispose of the fund by last will, then the person appointed to take by the last will takes the property from the grantor in the deed, in the same manner as if the will executing the power had been incorporated in the deed.

A deed of trust giving to the beneficiary a power of appointment by will, should be construed according to the law of the domicil of the grantor in the deed; and the effect and construction of the will executing the power are likewise governed by that law, and not by the law of the domicil of the testator.

A party to whom a fund has been erroneously awarded by an administration account in the Orphans' Court, when he was not legally entitled to the same according to the proper construction of a will, is liable for the fund to the true owner.

If a person who is legally entitled to certain property acquiesces in its distribution by an administration account to another person, because, on account of a mistake of law, he thinks the distributee to be entitled, there is no gift of the property, since the intention to give is lacking.

Property over which a power of appointment may be exer-
cised by the will of the donee of the power in a deed of trust
is not liable for the debts of the donee, and is not liable for
the collateral inheritance tax as if it were the property of the
donee.

When a deed of trust directs the trustees to hold the property
and pay the income to a life tenant, and upon his death to
dispose of the property to the person designated by the last
will of the life tenant, the executor named in the will, made
in execution of the power, is not the proper person to receive
and administer the fund.

If a trustee who holds a fund subject to appointment by the
donee of a power, instead of distributing the same under the
direction of a Court of equity, causes the fund to be erro-
neously distributed in the Orphans' Court, by the adminis-
trator of a will made in execution of the power, to persons
not legally entitled thereto, he is liable for such unauthorized
payment, although he acted in good faith and under profes-
sional advice.

A deed conveyed personal property to certain trustees to be
held by them "upon the trusts hereinafter declared," among
them, first, to receive the income and apply same to the use
of B. during her life, and, secondly, "upon the further trust,
upon the death of the said B., to dispose of the capital of the
fund hereby created in such manner and among such per-
sons," as the said B. may by duly executed will appoint.
*Held*, that upon the death of B. leaving a will executing the
power of appointment, the trust was not at an end, but the
trustees had the further active duty to perform of disposing
of the capital according to the appointment.

When an agreement or transaction relating to the trust fund is
entered into between a trustee and his *cestui que trust*, in
consequence of an ignorance or misapprehension of the law,
the *cestui que trust* is entitled to relief in equity against the
settlement made in consequence of such mistake.

A deed of trust executed in Paris by a grantor domiciled in
Maryland conveyed personal property to two trustees resid-
ing in Maryland, with directions to hold the same and pay
the income to Beatrice, daughter of the grantor, during her

life, and upon her death, upon the further trust, to dispose of the capital of the fund in such manner, and to and among such persons, as the said Beatrice may by a valid will appoint. The deed was made in contemplation of the marriage of Beatrice with the appellant, a citizen of France. After her marriage, she executed a valid will, by which she gave all of her property to her husband, constituting him her universal legatee. After her death, leaving two children surviving her, her father, who was one of the trustees, in reply to a notice from the appellant as to the will, requested him to take it to a certain American lawyer in Paris. This person advised the husband that the will was to be governed by French law, as his wife had become French through her marriage, and that, under that law, since she had left two children, he was entitled to only one-third of the property. The appellant sent the will to Baltimore, where it was admitted to probate in the Orphans' Court and letters of administration *c. t. a.* were granted to the same persons who were trustees. They stated in that Court an account, recited to be "under the laws of France," by which one-third of the property was distributed to the appellant and two-thirds to him as guardian of his children. The appellant left the conduct of the matter to the trustees saying that he would be guided by their advice. Afterwards he came to Baltimore, and told the trustees that he had been informed that it was not necessary to settle the estate according to the French law; that he was entitled to the whole of it, and that, in any event, he ought not to be required to give a bond as guardian, as none was required by the French law. He was informed by the managing trustee that the settlement had been properly made, and, in reply to his suggestion that an international lawyer should be consulted, said that if the settlement were delayed everything might be tied up for years. The appellant ceased his opposition, executed a bond as guardian and releases to the trustees, and the estate was distributed in accordance with the account stated in the Orphans' Court. Soon afterwards the appellant consulted other counsel, by whom he was advised that the settlement was erroneous, and that he was entitled to the entire estate. Upon the refusal of the trustees to re-open the matter, he filed the bill in this

case against the trustees and administrators and the infant children, alleging that he had been misled by persuasion and improper advice as to his legal rights, and that under the deed of trust and his wife's will, he was entitled to the entire estate. *Held,* that the will of the appellant's wife was not to be governed by the law of France, but by the law of Maryland, since it was the execution of a power of appointment under a deed made by a resident of Maryland, where the property was situated, and that under the law of Maryland, the will operated to give all the property held in trust to the appellant.

*Held,* further, that the administration and distribution of the property in the Orphans' Court were without warrant of law and conferred no title upon the distributees.

*Held,* further, that the fiduciary relation of trustee and *cestui que trust* existed between the appellant and the trustees at the time of the settlement, the validity of which must be determined in the light of that relation, and that consequently the mistake of law as to his private rights made by the appellant, in consequence of which he assented to the settlement, does not prevent him from now asking for its rescission.

*Held,* further, that the appellant is entitled to a decree setting aside the distribution of the fund made in the Orphans' Court, and cancelling the releases executed by him in his own right and as guardian, and that he is entitled to have the two-thirds of the trust fund, which were distributed to his children, awarded and paid over to him absolutely.

*Held,* further, that since the appellant was not diligent in ascertaining definitely his legal rights until after the trustees had, in good faith although erroneously, completed the distribution, and had led them to believe that he concurred in their views, the trustees will not be required to account for the costs incurred in that distribution, and the commissions received by one of the trustees as administrator, the other trustee having paid to the appellant at the time the commission received by him.

*Decided December 3rd, 1909.*

Appeal from the Circuit Court No. 2 of Baltimore City (SHARP, J.).

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER and BURKE, JJ.

*Maurice Leon* and *Redmond C. Stewart* (with whom was *Randolph Barton* on the brief), for the appellant.

This suit was brought by appellant to recover through equitable relief property of a value upwards of $215,000, which trustees induced him to relinquish without consideration.

The Orphans' Court record shows that until appellant signed the guardian's bond and releases, after his arrival in Baltimore, the proceedings had been carried on without proof of any consent by or notice to the appellant, and that he did not even renounce his prior right to qualify as executor under his late wife's will.

1. Upon the death of his wife, appellant became the owner of the property held by the trustees. Under *Md. Code*, Art. 93, sec. 323, the will was a valid execution of the power of appointment contained in the deed of trust, and the appellant thus became entitled to the entire capital held by the trustees.

The testatrix had a life estate in the income and a power of appointment as to the capital. The capital never formed part of her estate. Her husband took, not under the will, but under the trust deed, and from the donor direct, in the same manner "as if the power and the instrument executing it had been incorporated in one instrument." *Connor v. Waring,* 52 Md. 724;; *Balls v. Dampman,* 69 Md. 390; *Price v. Cherbonnier,* 103 Md. 107.

The trustees held the fund in Baltimore. The deed was executed in English, at the American Consulate in Paris, in a form unknown to French law, and created estates, rights, liabilities and powers utterly unknown to the French law. In it Mr. Winans describes himself as of Baltimore and expressly

refers to the Maryland Revised Statutes as governing the distribution of his personal estate in case of intestacy. He could not have made his declaration of domicil more positive. It follows that it must be construed according to the law of Maryland, the domicil of the donor. On this point see particularly *Sewall* v. *Wilmer,* 132 Mass. 131. The conclusion of the learned trial Judge: "It therefore appears that the plaintiff in this case was entitled under the deed of trust to the entire estate" is undoubtedly correct.

2. Upon the undisputed facts and in accordance with the law as declared by this Court and other leading tribunals of equity jurisdiction, appellant is entitled to the relief prayed for.

Had the trustees been dealing with a suspicious *cestui,* having no faith in them, not willing to take their word for anything, the situation would be different. But the fact that they enjoyed appellant's confidence to such an unlimited extent made their duty to him far greater than in ordinary cases: they knew that they were dealing with a foreigner, one to whom the law trusts was a sealed book, who had never heard of a trust except the one in suit, who was utterly unfamiliar with legal distinctions which Courts of equity make when interpreting trusts.

How was he to know the equitable theory governing this case under which the legal title to the property vested in the trustees, while the equitable title upon the death of his wife passed, not from her, but from her father directly to him? To him matters which the average American of good education would find easy to understand were extremely difficult: a Frenchman by birth and education, brought up in a country where rights are determined by statute law, by the Code Napoleon, where English common law and equity are unknown, where the very vocabulary used in English and American equity Courts is not understood, he could hardly be expected to determine what his rights were under this trust. Under such circumstances, being over 3,000 miles away from Baltimore, where the trust was being adminis-

tered, what could be more natural than that he should turn to Mr. Winans, his father-in-law and his trustee, for help?

He did so, with the result that Mr. Winans and his co-trustee induced him to sign away his rights to two-thirds of property the whole of which belonged to him absolutely, and to do so without his receiving anything in return. It is for the purpose of righting this wrong, and in order to restore appellant to the position which he occupied prior to the consummation of the transaction sought to be set aside, that this action was brought and this appeal taken.

An important precedent for this case is found in *Wheeler* v. *Smith* (U. S. Supreme Court), 9 How. 55.

In that case the *cestui* had received from the trustees $25,000 on a compromise of his rights by which they did not profit personally. In the case at bar appellant parted with $215,000 without receiving anything in return. The United States Supreme Court held that trustees should not compromise with their *cestui.* *A fortiori* they should not induce him to part with his property gratuitously, whether for their benefit or that of third persons does not matter. See also *Thomson* v. *Eastwood,* 2 Appeal Cases, 215.

In *Adams* v. *Cowen,* 177 U. S. 471, trustees had effected a distribution of a decedent's estate on the basis of their own interpretation of the trust, with the result that one legatee had received less than his share under the will, the difference going to increase the share of each of his co-legatees. Later his representatives brought an action to have the trust construed and to recover the difference between what he had received and what he should be held entitled to under the will. The trustes set up as a bar a release obtained by them without actual fraud. They had not profited personally by the transaction. The Supreme Court susained the legatee's right to recover. See also *Williams* v. *Williams,* 63 Md. 271; *Comstock* v. *Herron,* 55 Fed. Rep. 803; *Bennett* v. *Pierce,* 188 Mass. 186, where the Court said:

"Briefly no ingenuity of argument can cloud the legal principle which underlies this case, that the appellee had the

absolute right to require the appellants to account for trust funds, whether principal or incme, as ascertained and determined by a Court having full jurisdiction of the subject matter and of the parties; or dispose of the fact that they have failed and refused to perform this duty."

3. The appelant did not receive competent advice concerning his rights until after the execution of the releases. Mr. Duquaire's advice was: "Leave it to Mr. Winans."

It is uncontroverted that until about a week before the appellant came to America in September, 1908, he had not conferred with any lawyer on any point connected with the estate of his wife or his rights under the trust deed, except Mr. Jacobus, the lawyer of the trustees. Shortly before he left for Baltimore he was asked by Mr. Jacobus to sign a guardian's bond. He had never heard of such an instrument. The situation was baffling to him, as in the first place Mr. Jacobus had told him that the trust fund must be distributed as the estate of his wife in accordance with the French laws of inheritance, and in the second place the same lawyer had come forward with the request that he execute as guardian for his children a bond utterly unknown to French law.

On the question of whether a bond was required by the French law, the appellant deemed that he could properly ask the advice of a French lawyer and he did so. He refrained from consulting him concerning his rights under the trust deed for the obvious reason that no French lawyer could have helped him with competent advice on that subject.

If at St. Petersburg, where his wife died, and in France, where he proceeded shortly thereafter and where he remained until September 19th, 1908, lawyers accustomed to examine questions under the Maryland law could readily have been found, the situation would be different. But it is not too much to ask this Court to take judicial notice of the fact that French lawyers are incompetent to construe instruments such as the trust deed in suit or advise persons as to their rights thereunder.

Mr. Duquaire was not shown the trust deed and was not asked for advice as to it for the simple reason that he no doubt could not have read it if it had been shown him. When he was told by the Prince that the fund was to be distributed according to French law, he said: "If that is true, you were deceived at the time of your engagement," and he added: "I cannot tell you whether you have the right or not (to the entirety of the fund), *as I know nothing of that matter*, and you better leave it to Mr. Winans."

Appellant had been thoroughly disposed to rely upon Mr. Winans doing everything which his trustee should do to protect him. His own friend, Mr. Duquaire, told him, "Leave it to Mr. Winans," evidently realizing that Mr. Winans was in duty bound to safeguard appellant's rights under the trust.

It has been established beyond a doubt that when the appellant reached America, two weeks later, Mr. Winans and Mr. Latrobe both told him he must consent to the carrying out of their plan of distribution, and if Mr. Duquaire's influence affected his action at all, it affected it unquestionably in the direction of "leaving it to Mr. Winans."

There are few Americans who know that trustees when any doubt arises as to how their trust should be interpreted on any particular point are expected to apply to a Court of equity to construe the instrument and not decide the question themselves. If the average layman in this country is ignorant of such matters, is it extraordinary that a Frenchman who spent a year at the French Embassy in Washington prior to his marriage in 1905; and a fortnight in the United States subsequent thereto, who landed in Baltimore on September 26th, 1908, should not know a fact known so little among he average laymen in this country?

4. The transaction sought to be set aside was brought about through the exertion of undue influence on appellant by both trustees.

In *Pomeroy's Equity Jurisprudence* it is said: "Sec. 951. Undue Influence. Where there is no coercion amounting to

duress, but a transaction is the result of a moral, social or domestic force exerted upon a party, controlling the free action of his will and preventing any true consent, equity may relieve against the transaction, on the ground of undue influence, even though there may be no invalidity at law.  In the vast majority of instances, undue influence naturally has a field to work upon in the condition or circumstances of the person influenced, which render him peculiarly susceptible and yielding—his dependent or fiduciary relation towards the one exerting the influence, his mental or physical weakness, his pecuniary necessities, his ignorance, lack of advice,. and the like.  All these circumstances, however, are incidental, and not essential.  Where an antecedent fiduciary relation exists, a Court of equity will presume confidence misplaced and influence exerted."  Cited in *Adams* v. *Cowen,* 177 U. S. 484.

It can be seen that the immediate inducement for the Prince's action was:

First. Mr. Winans' declaration that the matter had been agreed upon and must be completed.

Second. Appellant's belief that his rights under the trust deed had been judicially construed in a Court of competent jurisdiction, induced by Mr. Latrobe and Judge Block.

Third. Appellant's fear that if he did not consent to the distribution urged by the trustees, "everything (namely, the entire trust estate) would be tied up perhaps for many years," as threatened by Mr. Latrobe.  Certainly, no benefit of any kind induced his action.

5. Although the Orphans' Court had no jurisdiction to construe the trust herein, and all its proceedings subsequent to the probate were void, appellant was misled into believing that a binding adjudication had been had, construing the trust.

The administration was tortious from its inception.  The trustees obtained letters of administration on February 10, 1908, without previous notice to appellant, who was notified of the fact in March, when a letter written by Mr. Latrobe

to Mr. Winans, dated February 14th, 1908, was read to him by Mr. Jacobus. As the late Princess had absolutely no personal estate in Maryland, the appointment of administrators c. t. a. in that State and all proceedings taken thereafter were utterly illegal, and as the releases herein sought to be set aside were granted as part of a proceeding which is void, that fact should necessarily involve the nullity of these releases.

6. The only neglect disclosed by the evidence is chargeable to the trustees, upon whom appellant relied to safeguard his legal rights, and who did nothing to obtain a construction of their trust according to the law of their own State, although in duty bound to do so for the faithful performance of their trust.

7. The transaction sought to be set aside cannot be sustained as due to a mistake of law: (a) where a trust relation exists a mistake of law injuriously affecting the *cestui* will vitiate the transaction; (b) aside from the trust relation and the misrepresentations which induced appellant to act, any mistake by him as to his rights under a contract governed by Maryland law was a mistake of fact. *Lewin on Trusts (Scott's Ed.)*, 1128-1130; *Perry on Trusts*, sec. 851; *Pomeroy's Eq. Jur.*, sec. 848; *McCarthy* v. *Decaix*, 2 Rus. & Mylne, 614; *Lammott* v. *Bowly*, 6 H. J. 526; *Billings* v. *Aspen Co.*, 51 Fed. Rep. 338.

8. The learned trial judge erred in viewing the transaction as a "settlement" or "compromise" of doubtful claims; "consideration," an essential requisite in such transactions, was lacking.

The cases cited by the judge on that point, every one of which has been read with care, present in every instance a "compromise" of doubtful rights agreed upon between the parties, all of whom had an interest in the estate. The question which arose in those cases was whether by means of such settlement some member of the family had obtained an unfair advantage over another. Whenever the settlement was sustained, it was supported by consideration.

9. The transaction cannot be sustained as a gift.

10. As no consideration exists to support the transaction sought to be set aside, the doctrine of estoppel has no application.

*John E. Semmes,* for Ross R. Winans and F. C. Latrobe, trustees and administrators.

The appellant in this case invokes the aid of a Court of equity, and asks that this Court decree that some $215,000 which he now holds as guardian of his infant children is his, free from the present right of said children to receive the same when they reach their majority.

The property, the subject of this controversy, is two-thirds of an estate settled upon the wife of the appellant by Mr. Winans at the time of the marriage of the appellant to his daughter; by an order of the Orphans' Court he is permitted to use the income from this two-thirds as he sees fit until the children reach their majority; the other one-third has been paid over to him as his absolute estate.

He claims this property by virtue of a will of the wife, made before the birth of her children; in fact, made by his wife five days after her marriage, whom he describes "as a girl that knew absolutely nothing about life."

He claims that the present interest of his children in this property was brought about by the joint action of Mr. Winans, the father of his wife, and Mr. Latrobe, who, by taking advantage of his ignorance, persuaded or induced him to give his children an interest in this property. That he acted in ignorance of his rights until after the settlement of the estate, when he was advised of his legal rights by his present counsel.

The litigation is, therefore, between the appellant and his infant children. The position taken by these defendants is, that so far as their duties are concerned, they were discharged when they turned over the property held by them as administrators. Upon the death of the life tenant the trust ceased; they were no longer trustees.

As they understood it, Mr. Jacobus, a lawyer, was employed as representing the estate; that the appellant agreed to his employment, and having been advised by him as to the proper method of the distribution of the estate, in full belief of the correctness of this decision, they made the distribution according to the opinion of Mr. Jacobus, which they understood was acquiesced in and approved by the appellant.

These defendants were led to believe that the division of the estate, as determined by Mr. Jacobus to be the one required by law, was entirely satisfactory to the appellant, by the fact that in addition to his acquiescence in the views of Mr. Jacobus, the appellant on November 7th, 1907, within a week after the death of his wife, wrote a letter to his father-in-law, in which he states: "Naturally my intention is to keep Beatrice's fortune for her children and turn it over to them at their majority, but I want to fulfill all the formalities, have it deposited under my name, and be able to touch the income quarterly as formerly."

The division as made and recited above gives him one-third absolutely, and two-thirds to be held by him as guardian until the majority of his children, he in the meantime being entitled to the entire income.

It was necessary and proper to invoke the aid of the Orphans' Court in the distribution of this estate. It is admitted by both parties that the will was properly probated and recorded in the Orphans' Court; that property was located here, and in order to pass title it was necessary to probate the will. Even should the estate not be liable for the debts of the Princess, yet for certain purposes it should pass through the process of administration in the Orphans' Court. The administration, so far as the distribution is concerned, was a proper one to be made in the Orphans' Court. In 22 *Am. and Eng. Cyc. of Law*, 1126: "Where an appointment is made by will, the estate created thereby is subject to the probate duty or legacy or succession tax, though the property appointed did not belong to the testator." See *Drake v. Attorney-General*, 10 Cl. & F. 259.

While it may be contended that in this particular case, that by the disposition made in the will there would be no collateral inheritance tax, still these are questions which should be passed upon by the Court, even though it should decide there was in fact no tax; the fund should be in a Court where this question could be disposed of.

In *Farwell on Powers,* page 325, par. 26: "When the donee of a general power of appointment over personalty, whether a *feme covert* or not, executes the power and appoints an executor, the executor is entitled to receive the appointed fund (*Re Hoskins,* 6 Ch. D. 281) and can give a valid discharge for it." *Hayes* v. *Oatley,* 14 Eq. 1.

In *Theobald on Wills,* 5th Ed., pages 219-221: "When a general power of appointment over a fund is executed by will the executors of the will are the proper persons to administer and give a discharge of the fund."

Messrs. Latrobe and Winans were merely the custodians of a fund, after the death of the Princess. They and the appellant did not occupy towards each other the relation of trustees and *cestui que trust.* When letters of administration were granted them the property was in their hands as administrators. It was not their duty to devote themselves to the interest of the Prince, or to render services of a trustee to the Prince any more than to his children; the trust was at an end upon the death of Beatrice Winans. *Graham* v. *Whitridge,* 99 Md. 248.

In considering the question as to whether or not influence was or was not exerted, the first consideration is, what was the capacity and what was the character of the person claimed to be influenced?

The second consideration is, the position and financial standing of the complainant; was his action hurried, without time for consultation?

The Prince was paid by the trustees $16,000 between December 7, 1907, and August 22, 1908. It is presumed that he was not financially troubled. Was he hurried? He had from December 5, 1907, to October 3, 1908, to consider the

matter. Did he have time to consult counsel? Not only did he have time, but he did consult counsel.

Was this transaction hurried? Did the Prince have time to investigate before he signed the release of October 28th, 1908? On December 5th, 1907, he called on Mr. Jacobus, and at that visit was told by Mr. Jacobus that he was only entitled to one-third of his wife's estate. The Prince gives February, 1908, as the date of this conversation. Administration account dividing the estate one-third to the Prince and two-thirds to the Prince as guardian was stated August 20th, 1908. The Prince reached Baltimore on September 25th, 1908. After having objected to giving the guardian's bond. he, on September 30th, wrote to Mr. Winans that he had determined to leave everything as it was. On October 3rd, 1908, he gives the bond, but not until the 28th of October, 1908, did he execute the release. From December 5th, 1907, to October 28th, 1908, he was free to determine what he should do.

Messrs. Winans and Latrobe until the Prince visited this country were under the impression: (1) That the selection of Mr. Jacobus to advise him was perfectly satisfactory to him. (2) That Jacobus' views of the division of the estate of his wife, both as to the method of the distribution and the interest of the respective parties would receive, met with his entire approbation.

*Bernard Carter,* for Henry and Beatrice de Galard de Bearn, infant appellees.

Upon being informed by the appellant of the death of his wife, and that she had made a will, Mr. Winans and Mr. Latrobe, whose trusteeship had been put an end to by her death, but who were responsible for the safe custody of the property which had belonged to the trust, and its delivery to whoever was legally entitled to it, were obliged to have it ascertained, (1) whether the alleged will devising all of the property covered by the deed of trust, to the appellant, was a "valid will and testament" within the meaning of those words

in the deed of trust; and (2) who, under the laws of the country or countries, applicable thereto, was or were entitled to receive from them the property which had come into their possession under the deed of trust, and could give them proper acquittances and releases in respect of said property. To ascertain these things Mr. Winans and Mr. Latrobe were entitled to ask legal advice to guide their action, and the expense of obtaining such legal advice, was one properly chargeable against the property in their hands.

When Mr. Winans was asked by the appellant, in his letter of November 17, 1907, to advise him what to do with the will, and he told him to send it to Mandeville C. Jacobus, he did so, believing that as he had assisted in the drawing of the deed of trust and was therefore familiar with its provisions, and also was a member of the bar of New York, and also was acquainted with the French law, he was the proper person to give advice as to the probate of the will and the delivery of the property covered by the deed of trust to those entitled to the same. Having given the above mentioned advice to the appellant, and assuming that it would be followed, it became the duty of Mr. Winans and Mr. Latrobe to communicate with Mr. Jacobus (as they did), and request his advice and direction in respect to the disposition to be made by them of the property which had come into their hands, under the deed of trust, and the properly securing of themselves in respect of the transfer of this property to those entitled to the same; they believing at that time that in view of the will having been made by a French citizen, the French law would be controlling in determining whether the will was, within the meaning of the deed of trust, a "Valid Will and Testament;" and as to the effect of that will on the disposition of the property covered by the deed of trust.

They therefore selected Mr. Jacobus as their legal adviser to guide them in reference to the delivery of the property which had come into their hands as trustees under the said deed.

It is indisputably the general doctrine of the common law, held, as well in England as in the United States, that the testamentary capacity as to personal property, including not only the general capacity to make a will, but also the disposable power over the estate, is governed by the law of the domicile of the testator.    3 *Eng. and Amer. Enc. of Law* (1st Edition), page 630; *Harrison* v. *Nixon,* 9 Peters, 504.

Notwithstanding this general principle, it will not be denied by the appellees that under the Maryland decisions, and decisions elsewhere, where property is left in trust for a life tenant, with a power to him or her to devise the same by last will and testament, the devisee or legatee, taking by the execution of the power, takes under the donor in like manner as if the power and instrument executing it had been in one instrument.    This being the case, it is held in many cases that the validity of the will executing the power, including the testamentary capacity of the testator and his right to dispose of the property, is to be governed by the law of the domicile of the donor of the power, which in the present case must be considered Maryland, Mr. Winans describing himself in the deed of trust as of Baltimore City, in the State of Maryland.

If this be true, then Mr. Winans and Mr. Latrobe were mistaken in supposing the law of France governed the right of the Princess to dispose of the property over which she had the power of appointment under the deed of trust.

The conclusion reached by Jacobus that, notwithstanding the provisions of the will of the Princess, the appellant took only one-third of the property covered by the deed of trust, and that the other two-thirds belonged to her children, is founded upon the provisions of the French Code, which prohibits a married woman leaving two children from disposing by will of more than one-third of the property of which she has the right to dispose; and therefore if the rights of the Princess to dispose of the property covered by the deed of trust is not governed by the law of France, but by the law of Maryland, it would seem to follow that Mr. Jacobus was

mistaken in the opinion and advice he gave to Messrs. Winans and Latrobe, that the appellant was only entitled to one-third and his children to the other two-thirds of the property covered by the deed of trust. And it would also follow that Messrs. Winans and Latrobe were mistaken in their apprehension of the law at the time of their employment of Mr. Jacobus.

But it is indisputable that they both of them acted in good faith, and they are in no way responsible to the appellant for that mistake. For while it was upon the recommendation of Mr. Winans that the appellant placed in the hands of Jacobus the matters connected with the probate of the will of his wife, and the transfer of the securities covered by the deed of trust, yet it was perfectly optional with him to accept this suggestion; and even after he accepted it and placed the matter in the hands of Jacobus, it was not only his privilege at any time that he became dissatisfied, with the opinions entertained by Jacobus that the French law regulated the distribution of the estate, and that thereby he was only entitled to one-third; or with the course of action mapped out by Jacobus to be taken in Baltimore in connection with the probate of the will, to have withdrawn the whole matter from Jacobus' hands and placed it in the hands of other counsel selected by himself. This it was his duty to do, irrespective of any warning or suggestion from Jacobus upon the subject. But it will be remembered that Jacobus testified that he warned the appellant that while it was his (Jacobus') opinion that the distribution of his wife's property was subject to the French law, and that under this law the appellant was only entitled to one-third of the estate, the appellant must select his own counsel on all matters involved, and especially as to the right of his children to share in the estate.

Although by virtue of the deed of trust, the trustees during the life of the Princess were required to receive the interest on the principal of the trust fund in their hands and apply the same to their use, free from the disposal, encumbrance or control of her husband, and as her seperate estate,

and they therefore had active duties to perform during her lifetime, it is well settled in Maryland that immediately upon her death, the trust estate in said trustees which had been created by the deed of trust, and had continued during the life of the Princess entirely ceased. *Graham* v. *Whitridge,* 99 Md. 292.

From the time of the death of the Princess until the probate of the will and the qualification of the executor named in the will, or the appointment of administrators *c. t. a.,* in his place, and their qualification, Mr. Winans and Mr. Latrobe were merely custodians of the capital of the trust property, with no power even to collect the interest; and upon the qualification of such executor or administrators, it was the duty of Mr. Winans and Mr. Latrobe to deliver the securities in which said property was invested to said executor, or said administrators, who themselves would hold it until it was distributed by the Court, which had taken probate of such will, and granted letters testamentary or of administration thereon, in respect to said property, to the person or persons entitled to the same.

It necessarily follows that there never at any time existed on the part of Mr. Winans or Mr. Latrobe, the persons who were constituted trustees by the deed of trust of June 9th, 1905, to the appellant, any such relation as is known in the law as the fiduciary relation existing between the trustees and *cestui que trust;* and therefore none of the principles and rules of action governing such fiduciary relations are applicable to the relations which existed between the appellant and Messrs. Winans and Latrobe.

The appellant had distinctly before him when he came to America, and before he determined to accept the one-third of the estate for himself and take the other two-thirds as guardian of his children, two distinct legal opinions of his legal rights, one of those opinions being that of his own counsel in France, who had been the counsel for his family since 1893. One opinion, that of Jacobus, being that his rights in the property were governed by the law of France; and the

other opinion, that of appellant's own counsel, being that it was not so governed, but by the laws of Maryland, and that being so governed he was entitled to the whole estate.   He was perfectly able to understand the question at issue, and fully able to take care of his own interests; and he chose to accept the opinion which gave him one-third of the estate, instead of the whole, and executed, as late as the 28th of October, 1908, a month after his arrival in Baltimore, ·releases under seal in full of all claims to the estate on his own behalf, upon the receipt of the one-third.

It further appears from the testimony of the appellant, that the suggestion was made to Mr. Winans, as well as to Mr. Latrobe, that in view of the difference of opinion between his own counsel, and Mr. Jacobus, who had been advising the trustees, the opinion of a New York lawyer acquainted with international law, should be obtained, and that the only reply made to it by Mr. Winans was, that he must discuss that with Mr. Latrobe.

Now, while Mr. Latrobe in reply to the suggestion of referring the difference of opinion between Mr. Duquaire, the counsel in France of the appellant, and Mr. Jacobus, in reference to the application of the French law to the will of the Princess, to a New York lawyer, expressed the opinion that Jacobus' interpretation of the law was the correct one, it was but the expression of an opinion by Mr. Latrobe, contrary to the advice which had been given to the appellant by his own counsel in France, the trusted adviser for years of his family; and therefore the appellant was at the fullest liberty, if he saw fit, to take the opinion of a New York lawyer to see whether he would substantiate that of his own lawyer in Paris, or the opinion expressed by Mr. Latrobe. And although Mr. Latrobe expressed the opinion that if a delay occurred in the settlement of the estate, he knew Mr. Winans would withdraw from the administration, this was nothing more than an expression of opinion by Mr. Latrobe as to an effect of further delay in the settlement of the estate. The appellant was perfectly free still to ascertain whether

the New York lawyer would agree with his Paris lawyer, even if it did effect the discontinuance of Mr. Winans in the administration and delay in the settlement of the estate.

Now, if the appellant chose to abide by the interpretation of his rights in the estate covered by the will of his wife, given to the administrators by Jacobus, rather than have the matter of difference of opinion between Jacobus and Duquaire referred to a New York lawyer, rather than offend the administrators (and what he really meant when he said this was that he did not wish to offend Mr. Winans), he did this after he had the fullest opportunity to determine for himself what he would do; and he cannot now be allowed to undo the things which he deliberately chose to do from the motives which he said guided him in the doing of them.

Nothing which was said by Mr. Winans, by Mr. Latrobe or by Judge Block to the appellant, even if the account of his interviews with them is taken as the correct one, can be by any possibility be considered as anything but the expression of the opinions entertained in good faith by these gentlemen respectively. There, therefore, cannot be any reasonable grounds for claiming that the action of the appellant in determining to accept the distribution of the property which had been held under the deed of trust, as made by the account approved and passed by the Orphans' Court on August 2, 1908, in pursuance of the opinion given by Jacobus to Messrs. Winans and Latrobe, the administrators, instead of insisting upon the disposal of that estate in accordance with the opinion of Mr. Duquaire, his own counsel, was caused by any fraud or misrepresentation of either Mr. Latrobe or Mr. Winans or Judge Block, or by any act upon the part of Messrs. Winans and Latrobe which can be considered as arising from a failure on their part to discharge any duty which they owed to the appellant.

All that Mr. Winans did was to refer the appellant to Mr. Latrobe. What was said to the appellant by Mr. Latrobe or by Judge Block (if they said what the appellant testifies to) was said in perfect good faith, in answer to questions asked

of them by the appellant, and with the exception of the opin-
ion expressed by Mr. Latrobe as to the effect of further delay
upon Mr. Winans' continuance in the administration) was
nothing but an affirmance of their belief in the correctness of
Jacobus' opinion, that the rights of the appellant and his
children were governed by the French law; while the opinion
of the long-standing counsel of appellant was that it was gov-
erned by the Maryland law. As neither Mr. Winans, Mr.
Latrobe nor Judge Block bore any fiduciary relations to
appellant, and all of them having acted in good faith, the ap-
pellant was competent to determine for himself, whether he
would or would not be guided by their advice.

In this state of case, it is well settled in Maryland by the
decisions of this Court, which are altogether in line with
established principles of jurisprudence upon this subject, that
the appellant having voluntarily accepted the distribution
made of the property covered by the deed of trust by the
Orphans' Court of Baltimore City on August 20, 1908, which
distribution was founded upon an erroneous view of the law
governing the distribution of that estate (as I now assume),
and having accepted said property, when he was informed
by his own counsel that the distribution wrongly deprived
him of the two-thirds of the estate distributed to his children;
and having, after full consideration, under his hand and
seal, released all claim that he might or could have to the
said two-thirds of said estate, he cannot now be heard in his
demand to annul that distribution and to have the said two-
thirds awarded to him. *Baker* v. *Baker,* 94 Md. 627; *M. &
C. C. of Balto.* v. *Lefferman,* 4 Gill, 425; *Lester* v. *M. & C.
C. of Balto.,* 29 Md. 415; *Sisson* v. *M. & C. C. of Balto.,* 51
Md. 98.

In *Stapleton* v. *Stapleton,* 1 Atkins, page 10, LORD HARD-
WICKE said: "An agreement entered into upon the supposi-
tion of a right, or of a doubtful right, although it after
comes out that the right was on the other side, shall be bind-
ing; and the right shall not prevail against the agreement of
the parties; for the right must always be on one side or the

other; and therefore the compromise of a doubtful right is sufficient for an agreement."

And in *Cann* v. *Cann,* 1 P. Williams, 727, LORD MACCLESFIELD said "When two parties are contending before the Court, and one releases his pretensions to the other, there can be no color to set aside the compromise, because the man that made it had a right; for by the same reasoning there can be no such thing as a compromise of a suit, nor room for any accommodation. Every release supposes the party making it to have a right, but this can be no reason for it being set aside; for then every release must be avoided."

In *McClellan* v. *Kennedy,* 8 Md. 248, the Court said: "If compromises are otherwise unobjectionable, they will be binding, and the right will not prevail against the agreement of parties, for the right must always be on the one side or the other, and there would be an end of compromises if they might be overthrown upon any subsequent ascertainment of right contrary thereto."

It does not need the citation of authorities to establish that nothing could be done under the will of the Princess until it was admitted to probate by some Probate Court, and under the circumstances of this case, the Orphans' Court of Baltimore City was the proper Probate Court. The executor named in a will, which executes a power of appointment, is the proper person to receive and take into his possession the property appointed by the will. If the property is to be paid to the executor named in the will, upon the probate, he would not be entitled to receive it unless he qualified as such executor according to the requirements of the law of Maryland relating to the qualification of executors; and among those requirements is that he shall give bond to be approved by the Orphans' Court, which would secure the discharge of his duties in respect to turning over the property at the proper time to those entitled to it under the will, although such property be not subject to the payment of the debts of the person executing the power.

As the appellant, the executor named, was living in France and the will was, not only with his assent but practically by his direction, sent to Baltimore City on the 6th day of December, 1907, for the purpose of its admission to probate, and as he had no intention of coming to America to qualify as executor, this action on his part was substantially a declaration that he would not take out letters testamentary under the will and that the Court should proceed as if he had formally renounced; and therefore the Orphans' Court was not only authorized, but required, to appoint administrators *c. t. a.*, and require them to give bond, in order that they would be in a position to recive from Messrs. Latrobe and Winans, the trustees named in the deed of trust, the property covered thereby. The appellant was promptly informed, through Jacobus, on February 25, 1908, of the admission of the will to probate, and of the grant of letters *c. t. a.* to Messrs. Winans and Latrobe, and, as heretofore shown, he fully ratified in every respect this action.

In England it is held that property, passing by the execution of a power, when it came into the hands of the executor, is liable for the legacy duty.

In Maryland, if a will, executed under a power, gives property to persons liable to pay the collateral inheritance tax imposed by the Maryland Statute upon certain classes of legatees or devisees, such legatees would be liable to the collateral inheritance tax, and as the executor or administrator is required to pay, through the Orphans' Court, this collateral inheritance tax, it is manifest that in such case the Orphans' Court upon the probate of such will, must take into its possession the property covered by the will. The laws of Maryland impose a tax upon the commissions allowed by the Orphans' Court to executors and administrators. Jurisdiction must exist in the Orphans' Court over the property bequeathed by will executed under a power, as well as by other wills, in order to enforce the collection of this tax.

But independently of the provisions imposing a tax on the commissions allowed executors and administrators, and im-

posing the collateral inheritance tax, it is respectfully submitted that as a will executed under a power must be probated and the executor or, in his stead, the administrator *c. t. a.,* is required and authorized to take possession of the property bequeathed under such power, the Orphans' Court which appointed them has jurisdiction over them in respect of the discharge of their duties concerning the property so coming into their hands; and the property having thus lawfully and necessarily come into the hands of the executor or administrator *c. t. a.,* can only be distributed under the order of the Orphans' Court to those entitled to it under the will. Having got into the hands of the administrators, in the Orphans' Courts, it could rightfully get out of their hands only by an order of that Court.

For although it is the law of this Court that the Orphans' Court, while they have exclusive jurisdiction in the matter of probate of wills, have no power in some cases, where there is a controversy as to the rights of persons claiming the property, to adjudicate their respective rights (32 Md. 15, *Schul* v. *Murray*) ; yet it is equally certain that where there is no controversy, because there is agreement between all the parties as to their respective rights, it is the clear duty of administrators, through an order of the Orphans' Court, to distribute the property in their hands to those entitled to receive it. No citation of cases is needed in support of this proposition. Moreover its jurisdiction includes ascertainment of assets, legatees, and what they take under will. 45 Md. 249; 72 Md. 202; 103 Md. 118.

Therefore, in this case, there can be no doubt, it is respectfully submitted, that upon the agreement made by the appellant as early as February, 1908, the Court had the power to make the order of distribution made by it on August 20, 1908.

It follows from the foregoing, that Messrs. Winans and Latrobe, as administratrs *c. t. a.,* lawfully received, as such administrators, from the trustees the property covered by the deed of trust; that the Court lawfully assumed jurisdiction

over the discharge of the duties of such administrators in respect thereto, lawfully allowed commissions to said administrators, and required the payment of the costs of said administration out of the fund, even if it be held under Maryland decisions that no debts of the deceased were payable out of the fund which came into the hands of the administrators. We may add, however, that it is determined by the decisions of the Supreme Court of the United States and by other Courts, that where a will is executed under a power in favor of a volunteer, the trustee becomes subject to the debts of the donee of the power. *Brashiers* v. *Cochrane,* 112 U. S. 352; *In re Harvey Estate,* L. R., 13 Ch., Div. 216; *Johnson* v. *Cushing* 15 N. H. 298; *Clapp* v. *Ingraham,* 126 Mass.

But in view of the decision of this Court in 103 Md. 107, *Price* v. *Cherbonnier,* it is uncertain whether this doctrine would be adopted in Maryland. The determination of this question is in no way material to this case.

It is in no way essential to the affirmance of the decree of the Court below to show that the Orphans' Court of Baltimore City had jurisdiction to pass the administration account passed by it on August 20, 1908, distributing the property received by the administrators *c. t. a.,* from the trustees named in the deed of trust, or even that the trustees named in the deed of trust had lawfully paid over to the administrators the property which they had held under said deed of trust.

The property was in the hands of the administrators, and the appellant had agreed to accept the one-third of the said property as his own individual share, and the other two-thirds as guardian of his children; had received said respective parts of said property in said respective capacities, and had executed under seal a release for his own part, as well to the trustees as to the administrators, and a release under seal as guardian for his children, to said trustees and administrators. Therefore, if the property so received and so released was not lawfully in the hands of the administrators, it remainded in the hands of the trustees; and the action of the

appellant above set forth is equivalent in all respects as if he had made a deed to himself as guardian for his children of the two-thirds of the property.

SCHMUCKER, J., delivered the opinion of the Court.

The appeal in this case was taken from a decree of Circuit Court No. 2 of Baltimore City dismissing a bill filed by the appellant. The purpose of the bill was to procure the construction of a deed of trust and of a will executing a power of appointment conferred upon the testatrix by the deed; and also to have certain proceedings of the Orphans' Court of Baltimore City declared void and the releases given in pursuance thereof cancelled and set aside.

The deed of trust was made in favor of the appellant's wife for her life by her father, on the eve of her marriage, and it gave to her an unrestrained power of testamentary appointment of the corpus of the trust estate. By her will, made after her marriage, she gave her entire estate absolutely to her husband. After her death the Orphans' Court undertook to administer upon the property which had passed under the deed and the appointment, consisting of railroad bonds, as if it had been her own property, and distributed it one-third to the appellant as her surviving husband, and the remaining two-thirds to her two surviving children, for whom he was made guardian. The bonds were delivered to the appellant, one-third in his own right and the residue as guardian for his children, and he executed releases therefor to the administrators of his wife's estate and the trustees under the deed of trust.

Within two and a half months after receiving the bonds and executing the releases, the appellant filed his bill in the present case insisting that upon his wife's death the entire corpus of the trust estate became his individual property in his own right under the operation of the deed of trust, by virtue of the devise in his favor in her will, which constituted an exercise of the power of appointment conferred on her by the deed; and that the whole of the proceedings by

which two-thirds of the property had been awarded to his
children were erroneous and void, and that he was entitled to
have them annulled and set aside.

After hearing the case the learned judge of the Court
below held that, through the execution of the power of ap-
pointment by his wife in her will, the appellant became en-
titled in his own right to the whole of the property conveyed
to the trustees by the deed of trust, but the bill was dis-
missed because the judge was of the opinion that the appel-
lant had forfeited his right to relief in equity by his acqui-
escence and co-operation in the various steps by means of
which two-thirds of the property had been awarded to his
children.

An outline of the material facts, appearing in the record,
sufficient for the purposes of this opinion, may be stated as
follows:

On June 19th, 1905, Ross R. Winans, an American citi-
zen residing in Baltimore, but then temporarily in Paris,
executed in the latter city a deed of trust to himself and
Ferdinand C. Latrobe, also of Baltimore, conveying to them
railway mortgage bonds of the par value of $284,000, upon
trust, first, "to receive the interest and income thereof and
apply the same to the use of Beatrice Winans (the grantor's
daughter) during her life, free from the disposal or encum-
brance or the control of any husband and as her separate es-
tate; * * *" and, secondly, "upon the further trust, upon
the death of the said Beatrice Winans, to dispose of the
capital of the fund hereby created in such manner and to and
among such person or persons and in such amounts as the
said Beatrice Winans may by a valid will and testament
duly executed appoint, and upon such limitation by way of
trust or otherwise as in the discretion of the said Beatrice
Winans may be lawfully devised."

There were other alternative trusts to take effect if Bea-
trice Winans died intestate, but as they never became opera-
tive it is unnecessary to notice them here. The deed also
contained provisions for changes in the investment of the

corpus of the trust fund and the filling of vacancies which might occur in the trusteeship.

The deed of trust was made in contemplation of the marriage, which occurred a few days after its execution, of Beatrice Winans to the appellant, the Prince of Bearn and Chalais, who is a French citizen engaged in the diplomatic service of his country. A marriage settlement was also made between the Prince and his intended wife prior to their marriage. The object of the deed of trust and marriage settlement were to provide for Miss Winans after her marriage a suitable income and to secure to her the separate enjoyment of her estate.

On June 29th, 1905, after Miss Winans had become the Princess of Bearn and Chalais by her marriage to the appellant, she executed a will in Paris giving him her entire estate. The will, omitting the formal parts, was in the following language: "I give and bequeath to the Prince de Bearn, my husband, the totality of all my property, personal and real, that I may leave at my decease, without exception; consequently I institute him as my universal legatee. I institute equally the Prince de Bearn, my husband, to be my testamentary executor."

On October 17th, 1907, the Princess de Bearn (nee Winans) died at St. Petersburg, Russia, where her husband was serving as secretary of the French Embassy. She left two children surviving her.

On November 7th the appellant wrote from St. Petersburg to Mr. Winans at Baltimore that his wife Beatrice had made a will in his favor, and asked whether he should forward it to America or send it to Mr. Winans' lawyer. In the letter the appellant said:

"Naturally, my intention is to keep Beatrice's fortune for her children, and turn it over to them at their majority, but I want to fulfill all the formalities, to have it deposited under my name and to be able to touch the income quarterly as formerly."

Mr. Winans, in response to the appellant's letter, cabled him on November 17th, 1907, to take the will to Mr. Jacobus in Paris, who would have it legally probated and direct the trustees as to the transfer of the securities, and also prepare releases for them. Mr. Jacobus was an American lawyer attached to an advocate's office in Paris, but was not a member of the French Bar. Both he and Mr. Kelley, to whose office he was attached, had been employed by Mr. Winans to represent him in the preparation of the deed of trust and the marriage settlement.

Mr. Winans also at the same time wrote to Jacobus informing him that the will would be brought to his office by the appellant, and telling him where to find the deed of trust, and requesting him to settle up the matter as soon as he could. In Mr. Winans' letter was enclosed one from Mr. Latrobe to Mr. Jacobus informing him that the trustees were ready to transfer the securities "to whoever under the will and the laws of France may be entitled to receive the same."

The appellant on receipt of Mr. Winans' cablegram took the will to Mr. Jacobus in Paris, informing him that he had brought it at Mr. Winans' request. Mr. Jacobus read to him the letters from Mr. Winans and Mr. Latrobe, and discussed the situation with him at some length. He told the appellant that, as his wife had left two children, they were under the French law entitled to a "reserve" of two-thirds of her estate, and he was entitled, under her will, to only one-third of it, and advised that the will be sent to America for probate. The appellant stated that he had understood the effect of the deed of trust to be to confer on his wife the power to dispose of the whole of her estate, but, on being advised by Mr. Jacobus that his wife, having become French through her marriage to him, her estate must be divided according to the French law, he replied that he would leave the matter to Mr. Jacobus and Mr. Winans, as he knew that the latter would do the proper thing.

Jacobus wrote to Mr. Winans on December 6th, 1907, informing him that he had received the will from the appel-

lant and sent it to him by registered mail. He also stated as a first impression that, as the Princess de Bearn had become a French citizen by her marriage, her children had an interest in her estate and promised to examine the matter more closely and give him exact advice later. On December 30th he wrote again to Mr. Winans that further examination had convinced him that the Princess could not dispose of more than one-third of her entire estate because of the fact that she left two children, and quoted to him in support of that view two sections from the French Civil Code restraining the donation by persons *of their own property* by will. Those sections, when translated, read as follows:

Section 893. "No one can dispose of his property gratuitously except by a donation *inter vivos* or by a will under the terms hereinafter established."

Section 913. "Donations either by instrument *inter vivos* or by will cannot exceed the half of the property of the donor if he leaves at his decease an only child; they cannot exceed one-third of his property if he leaves two children, or one-quarter if the leaves three children or more."

Jacobus in the same letter informed Mr. Winans that under the French law the father was the guardian of his minor children and as such had the right to receive and receipt for any property coming to them, and suggested that he and Mr. Latrobe have the French law proven to the Baltimore Court and have it appoint either the appellant or some residents of Baltimore guardians for the appellant's children and let their estate be paid over to the guardian who could execute releases to the trustees.

In reply to the foregoing letter Mr. Latrobe wrote to Jacobus on January 10th, 1908, that Mr. Winans preferred that the appellant should be made guardian of his children and would adopt his (Jacobus') suggestion and when the will was probated apply to the Court to order the payment to the appellant as guardian of his two children their two-thirds of the estate, but that the appellant would have to give a proper guardian's bond. In the same letter Jacobus was re-

quested to prepare two releases to Winans and Latrobe as trustees under the deed of trust, one from the appellant for the one-third of the trust estate coming to him in his own right and the other from him as guardian for his children's two-thirds.

After this correspondence the will of the Princess de Bearn, which had been offered for probate in the Orphans' Court of Baltimore City, was on the 10th of February, 1908, formally admitted to probate and letters of administration *c. t. a.* upon her estate were granted to Ross R. Winans and Ferdinand C. Latrobe who duly qualified. Those gentlemen then proceeded to administer the estate just as if the railroad bonds, constituting the corpus of the trust estate under the deed of trust, had been the property of the testatrix in her own right. They included those bonds in the inventory returned by them of her personal estate in which they were appraised at $332,880. They charged themeselves with them in their account and the net proceeds thereof, remaining after paying the costs of the administration including a commission of $8,578.15 allowed to the accountants, and certain income paid to the appellant pending the administration was distributed, "under the laws of France" as recited in the account, one-third to the appellant in his own right and the remaining two-thirds to him as the guardian of his two children. Mr. Winans sent his half, of the net commissions allowed to the administrators, to the appellant, but Mr. Latrobe retained his half.

During the period covered by the administration amicable relations existed and friendly correspondence took place between the appellant and Messrs. Winans and Latrobe, and he made no objection to them to the course which they were pursuing but left the conduct of the entire transaction to them, saying to them, through Mr. Jacobus, that he desired to be guided in the matter by their advice.

When however toward the close of the administration Jacobus presented to the appellant for execution a guardian's bond, which Mr. Latrobe had prepared and forwarded to

Paris, he demurred and said that the French law did not require a guardian to give bond and if he was to be guardian after that law none ought to be asked of him. He subsequently said to Mr. Archibald, to whose office Jacobus was attached, that he had concluded to follow the advice of a friend with whom he had conferred and take the bond back to America and "talk it over with his father-in-law" (Mr. Winans). The appellant testified that the friend whom he had consulted was Mr. Duquaire, a retired French advocate and an old family adviser, who had told him that the French law required no bond of a guardian but that he could not tell him what he must do in the present situation and advised him to leave it to Mr. Winans.

The appellant then came to Baltimore arriving there after the distribution account of the estate had been stated in the Orphans' Court. He first visited Mr. Winans to whom he stated that he had been informed that it was not necessary to settle the estate according to the French law and that he was entitled to the whole of it, or in any event he ought not to be asked to give a bond as guardian when none was required by the French law. Mr. Winans expressed surprise at the appellant's attitude saying that he had all along supposed that he and Mr. Latrobe were proceeding in entire accordance with his (the appellant's) wishes and had from time to time explained to him through Mr. Jacobus what they were doing and understood that he agreed with Mr. Jacobus that the plan of settling the estate under the latter's advice was the only proper one. The appellant replied that he had not understood the matter and thought it would be wise to have a consultation with lawyers in New York knowing something about international law. Mr. Winans then said that the estate was then so nearly settled that he did not know whether any change could be made in it, and informed the appellant that he would have to see Mr. Latrobe about that.

After that the appellant had several interviews with Mr. Latrobe stating his views on the subject of the estate and his

own rights therein substantially as he had done to Mr. Winans. According to the appellant's account, when he stated his views to Mr. Latrobe the latter replied that the trustees had acted according to the directions of Mr. Jacobus who had explained to the appellant what was being done. Mr. Latrobe suggested to the appellant that if he wanted to discuss the matter he might go to see the Chief Judge of the Orphans' Court who would explain it to him. The appellant assenting to the suggestion, Mr. Latrobe took him to the Orphans' Court and introduced him to CHIEF JUDGE BLOCK, stating at the same time what his difficulty was. JUDGE BLOCK informed him that the settlement had been carried out according to the French law and that it was practically impossible to change it, and suggested to him to follow the advice of Mr. Latrobe as he was a lawyer. On the return from the Court to Mr. Latrobe's office the appellant reiterated his desire to have the opinion of New York lawyers on the case when Mr. Latrobe assured him that everything had been done according to the French law under the advice of Jacobus and further said that if the settlement of the estate were delayed he knew Mr. Winans would withdraw from the administration and that everything would be tied up, perhaps for many years. The appellant thereupon ceased his opposition and executed the bond and the estate was distributed in accordance with the account stated in the Orphans' Court.

Mr. Latrobe's recollection of his interviews with the appellant was not very distinct as to details. He remembered the visit to the Orphans' Court but said that the interview with JUDGE BLOCK consisted only of "passing pleasantries of the day" and there was no explanation of the settlement of the estate then made to the appellant. But in a letter subsequently written to the appellant by Mr. Latrobe he said of this visit to the Orphans' Court: "I also had your own verbal assurance, after we had together visited the Orphans' Court of Baltimore City where the Chief Judge had ex-

plained to you the distribution, that you were satisfied and accepted the decision of the Court."

Judge Block's recollection of the visit to his Court agreed with that of Mr. Latrobe and he was positive that he had not undertaken to explain to the appellant the nature of the settlement of the estate or asserted its correctness.

After the settlement of the estate, in accordance with the administration account, had been consummated and releases given to Messrs. Winans and Latrobe, the appellant was advised by counsel in New York that the settlement had been erroneously made that he could obtain relief from it by a proper proceeding in equity. He applied to Mr. Winans and Mr. Latrobe to consent to open up the case, and upon their declining to do so he filed the present bill against Messrs. Winans and Latrobe as trustees under the deed of trust and administrators c. t. a. of his wife's estate, making defendants also of his infant children.

The bill, after alleging the facts of which we have given a resume, averred that the appellant, in his ignorance of the law had been induced to abstain from opposing the distribution of the trust property made by the Orphans' Court as part of his wife's estate, by improper influence and persuasion exerted upon him by Mr. Latrobe who was the managing trustee and the legal adviser of his co-trustee, and by the form and appearance of independent advice from the Judge of the Orphans' Court procured by Latrobe to be given to him. It prayed for a construction of the deed of trust, a declaration that the will of his wife constituted a valid exercise of the power of appointment conferred upon her by the deed, and a determination that under the deed and the appointment he became entitled, at her death, to the entire property held by the trustees under the deed. It also prayed that the proceedings of the Orphans' Court attempting to dispose of the property as part of her estate be declared void and that the releases given by him to Winans and Latrobe as trustees and administrators be cancelled and for an account from Mr. Latrobe of the sum retained by him as commis-

sions, and for general relief. The bill acquitted Mr Winans of any thought or desire of gain or advantage to himself in the premises and disclaimed any intention to charge either him or JUDGE BLOCK with any purpose to injure or mislead the appellant.

The answers of the adult defendants while admitting most of the facts of the narrative of events contained in the bill, did not concede the legal operation and effect attributed by the bill to the deed of trust and the will of the appellant's wife, but asserted that those instruments under the circumstances of the case had the opposite effect, and that the administrators appointed by the Orphans' Court had come lawfully into possession of the property covered by the deed and that the proceedings of that Court in relation to the property were not void. They further alleged that the entire disposition of the property was made with the full knowledge and assent of the appellant and in accordance with what the defendants were led by his conduct and statements to believe were his wishes. Mr. Latrobe in his answer denies that he dissuaded the appellant from consulting another lawyer before completing the distribution of the property or that he advised or procured him to ask advice or explanation of the distribution from any Judge of the Orphans' Court or that any such advice or explanation was ever given in his presence to the appellant. Both answers denied the right of the appellant to the relief prayed for in his bill.

We agree with the learned Judge below that, under the deed of trust and the will of the appellant's wife, he became entitled in his own right at her death to all of the property then held by the trustees under the deed. Sec. 323 of Art. 93 of the Code of this State provides that:

"Every devise or bequest purporting to be of all real and personal property belonging to the testator shall be construed to include also all property over which he has a general power of appointment, unless the contrary intention shall appear in the will or codicil containing such devise or bequest."

It is also well settled in this State that in such cases the appointee takes title not under the will making the appointment but directly from the donor of the power and "in like manner as if the power and the instrument executing it had been incorporated in one instrument." *Conner* v. *Waring,* 52 *Md.* 732-3; *Price* v. *Cherbonnier,* 103 Md. 111.

It is the intent of the donor of a power that governs in its construction (*Nevin* v. *Gillespie,* 56 Md. 327), and it is generally held that it should receive an interpretation in accordance with the law of his domicile. 31 *Cyc.* 1056; *Lane* v. *Lane,* 64 L. R. A. 849, and cases cited in notes at pages 892, 896 *et seq.* That rule is, in our judgment, applicable with especial force to a case like the present one where the domicile of the donor and the location of the property subject to the power are the same.

Even if we were to hold that because the property consists of personalty, its disposition should be governed by the law of France, of which country the testatrix had become a citipen, the French law, in the absence of proof to the contrary, will be presumed to be the same as ours. *McClellan* v. *Kennard,* 8 Md. 230; *Haney* v. *Marshall,* 9 Md. 194; *State* v. *P. & C. R. R.,* 45 Md. 41. There is no proof in this case of the law of France touching the interpretation of powers or their operation upon the property to which they relate. The two sections of the French Civil Code to which our attention has been called refer only to donations by a testator of his or her own estate and throw no light upon the questions involved here.

It being thus apparent that the appellant, upon the death of his wife and the probate of her will, became entitled in his own right to the bonds held by the trustees under the deed, it necessarily follows that the return by them of the bonds to the Orphans' Court as part of his wife's estate and the attempted distribution thereof by that Court as part of her estate were without warrant of law and of themselves operated to confer no title to the bonds upon the persons to whom the distribution was made. So far as the one-third

of the bonds awarded to the appellant in his own right is concerned, no injury was done by the distribution, for he was in any event entitled to them under the execution of the power.   In so far, however, as the two children may be regarded as having received the two-thirds of the bonds wrongfully awarded to them, they must be treated as having received them subject to the trusts of the deed and as in equity bound to refund them to the appellant, unless he has deprived himself of his right to equitable relief by his acquiescence and concurrence in the settlement of the estate and the distribution of the bonds.   *Hanson* v. *Worthington,* 12 Md. 418; *Owings* v. *Rhodes,* 65 Md. 408.

The illegal proceedings in the Orphans' Court, under which two-thirds of the fund were awarded to the children of the appellant, together with his failure to oppose them or his acquiescence in them at the time of their occurrence, ought not, in our opinion, to be held to amount to a gift or donation from him to his children of the portion of the fund awarded to them.   It is obvious from the whole case that those proceedings were not taken by the trustees or acquiesced in by him with the intention to effect a gift to the children.. The proceedings so far as they had relation to the children were plainly intended to secure the award to them of only that to which they were wrongly supposed to be entitled in their own right as a matter of law, and not as a gift from their father.

The appellant did, it is true, in his letter announcing the death of his wife to her father, express an intention on his part to keep his wife's fortune for her children and turn it over to them at their majority.   That statement merely declares the future disposition which he intended to make of property which he then supposed to be his own, and it was never acted upon on the assumption that it gave authority to the trustees to make a gift of the fund as his agents or for his account.   They acted throughout upon the mistaken view that the children were entitled under the French law to two-thirds of the fund.

We do not regard as sound the appellees' contention that it was necessary or at least proper for the trustees to invoke the aid of the Orphans' Court in the distribution of the trust fund because it was liable for the debts of the appellant's wife or the payment of the collateral inheritance tax. In the case of *Price* v. *Cherbonnier,* 103 Md. 107, we held that property appointed under a power by an equitable life tenant, as was done in the present case, could not be subjected to the payment of his debts. Under the provisions of the Code, Art. 81, secs. 177 *et seq.,* the collateral inheritance tax is imposed only upon property passing to collateral relations from persons who may die seized thereof or transferred by will or by deed or other instrument intended to take effect in possession after the death of the grantor, bargainor, devisor or donor. That description does not include the property involved in the present controversy.

Nor do we think that, under the testamentary system in force in this State, when the donee of a general power of appointment over personalty executes the power by will and appoints an executor, he is ordinarily the proper person to administer and discharge the fund. Such is certainly not the case when the instrument conferring the power conveys the fund to trustees and directs them to *dispose of it to the person appointed* by the donee of the power. The only cases cited by the appellees as direct authorities upon this branch of the case are English ones. We have examined them, and in every instance, with one exception, there were special circumstances affording reasons for approving the payment of the fund to the executor of the donee of the power.

Courts of equity, and not the Orphans' Courts of this State are the tribunals having jurisdiction over trusts and their construction and administration. *Woods* v. *Fuller,* 61 Md. 459. If upon the death of the life tenant in the case before us the trustees were in any doubt as to the proper disposition to be made of the fund in their hands, they should have applied to a Court of equity, in accordance to the long-existing practice in this State, by a bill convening all parties

in interest, and procured a construction of the deed of trust and a disposition of the fund under the direction and supervision of the Court. If they had adopted that course and made the distribution of the fund under the Court's decree, they would have been protected and the appellant would have been concluded by it.

They adopted the erroneous plan of following the suggestion of an adviser who proved to be unfamiliar with the laws of this State applicable to the discharge of the duties which it was incumbent upon them to perform. They were wrongly advised and as a result made unauthorized payments of portions of the trust funds in their hands. They acted in entire good faith and in accorddance with what they supposed to be the wishes of the appellant, but, as was said in *Owings* v. *Rhodes, supra,* at pages 416-417:

"The rule is well settled in this State and in England that when there has been an unauthorized payment of funds held in a fiduciary capacity the loss must fall on him who thus makes the payment, and not on an innocent party. Referring to such payments made by executors, LORD REDESDALE said: 'I have no doubt the executors meant to act fairly and honestly, but they were misadvised; and the Court must proceed not upon the improper advice under which an executor has acted, but upon the acts he has done. If under the best advice he could procure he acts wrong, it is his misfortune, but public policy requires that he should be the person to suffer.' *Doyle* v. *Blake,* 2 Sch. & Lef. 243. This rule has received the sanction of the Courts of equity in Maryland, and numbers of cases might be cited in which it has been rigidly enforced. *Green* v. *Putney,* 1 Md. Chy. 262; *Murray* v. *Feinour,* 2 Md. Chy. 418."

Although we regard the conduct of the trustees in the case before us, in making the distribution of the trust fund upon the advice of Mr. Jacobus, instead of doing it under the direction of a Court of equity, as within the operation of the doctrine thus announced in *Owings* v. *Rhodes,* they will for

reasons to be hereinafter mentioned not be called on to suffer any pecuniary loss therefrom.

In order to ascertain to what extent, if at all, the appellant by his intercourse and transactions with the appellees Winans and Latrobe forfeited or impaired his right to the relief for which he now asks it is essential to determine, at the start, in what attitude they stood toward each other. The appellant claims that those appellees continue to be trustees under the deed until they pay over the trust fund to him as the appointee under the power conferred upon his wife by the deed, and that therefore they stand in a fiduciary relation to him, and he is and has been entitled to receive from them the treatment due from trustees to their *cestui que trust.*

They, on the other hand, insist that upon the death of the appellant's wife all of the purposes of the trust created by the deed were accomplished, and it came to an end and they became simply custodians of the fund, and that they tendered themselves ready to deliver it to the parties entitled to it, and did in fact deliver it with the appellant's full assent and approbation to the persons to whom both he and they were advised by counsel that it belonged. They further contend that the payment and distribution of the fund thus made to him and his children constituted a compromise or settlement binding upon him, even if in making it the parties acted under a mistaken view of their legal rights.

It has repeatedly been held by this Court to be the firmly settled law that where an estate is given to trustees in trust to pay the income to a person for life and at his or her decease merely to hold the same for the use of other named persons, the trust ceases upon the death of the life tenant, because its purposes have been accomplished. In such case where the trust property consists of realty, the Statute of Uses executes the use and vests the legal title in the party to whom the estate was limited at the expiration of the life estate, and a somewhat similar result occurs when the estate consists of personalty, unless there be an apparent intention

to the contrary, although the Statute of Uses is, strictly speaking, not applicable to personal property. *Long* v. *Long,* 62 Md. 65, 66; *Graham* v. *Whitridge,* 99 Md. 292; *Hooper* v. *Felgner,* 80 Md. 271-2; *Lee* v. *O'Donnell,* 95 Md. 546.

The authorities agree however that in such cases so long as there remain any active duties to be performed by the trustee the trust continues. In *Long* v. *Long, supra,* where the devise was of real estate, it was held that a direction in the will, that the shares given in remainder should be equally divided, merely meant that the interests of the remainder-men should be equal and required no active agency of the trustee to ascertain those interests and therefore did not keep the trust alive or prevent the estate in remainder from vesting.

Whether a devise of personalty in trust for one person for life with remainder to another manifests an "apparent intention" that the trust shall continue after the death of the life tenant depends upon the terms of the will creating the trust. When that intention can be plainly gathered from the will the trustee can only be discharged from his trust by paying over the fund to the *cestui que trust* in remainder. *Hanson* v. *Worthington, supra; Denton* v. *Denton,* 17 Md. 407-8. In both of those cases the trust was held to continue after the death of the life tenant upon consideration of the whole will without any express statement therein that the active duties of the trustee should extend beyond that event. In both cases also our predecessors quoted with approval from *Hill on Trustees* the statement: "The question as to the duration of the estate of the trustees can rarely arise where the subject is personal estate, for in that case the whole legal interest is in general vested in the trustees by gift, without any words of limitation and will continue in them until divested by a legal transfer or assignment."

Turning now to the deed creating the trust in the present case we find that it conveys the bonds to the trustees to be held by them "upon the trusts hereinafter declared." It then specifies, first the trust "to receive the interest and in-

come thereof" and makes disposition of it as therein directed to the daughter Beatrice during her life. In the next paragraph it provides: "And *upon the further trust* upon the death of the said Beatrice Winans *to dispose of the capital* of the fund hereby created in such manner and to and amongst such person or persons and in such amounts" and "upon such limitation" as Beatrice might by her will direct. Other alternative trusts then follow each in a separate paragraph, with which we are not now concerned.

A fair construction of that instrument, according to its general tenor and the ordinary meaning of the language used in it, requires us to hold that the grantor did not intend the active duty of the trustees to cease upon the death of his daughter but intended also to impose upon them the further active duty of disposing of the capital of the trust fund, upon her death, to such persons and in such manner as she might by her will appoint. If the trustees under this deed had been required under the provisions of the Code to give bond for the due execution of their trust, and then, after faithfully discharging their duties so long as the life tenant lived, had at her death paid over the capital of the trust estate to a stranger or squandered it, can it be doubted that such wrongful payment or diversion of the fund would have amounted to a breach of trust for which their bond would have been liable?

The fiduciary relation of trustees and *cestui que trust* between Winans and Latrobe and the appellant must be regarded as having existed during the occurrence of the transactions between them relative to the disposition of the corpus of the trust fund and the propriety of the transactions must be determined in the light of that relation. In view of the existence of that relation between the parties we do not think that the legal principles and propositions, governing settlements and compositions of disputed claims, which are so fully and ably expounded upon the brief of the distinguished counsel for the infant defendants, should be so applied to this case as to hold that the acts and conduct of the appellant pre-

clude him from recovering the portion of the trust fund which was erroneously distributed to his children and having the releases which he gave therefor set aside. Without reviewing in detail the acts and conduct of the several participants in the erroneous distribution made of two-thirds of the trust fund we have come to the conclusion that taken together they show that the parties, instead of resorting to a competent tribunal for direction, mutually relied upon mistaken advice and fell into a common error by means of which much valuable property undoubtedly belonging to the appellant was withheld from him and awarded to his children who had no right to it. That property is still in existence and within reach of the Court and it is but equitable that it should be restored to him.

The mistake thus made was it is true in a certain sense one of law, although in its most important feature it was one of private right of ownership which was said by LORD WEST-BURY, in *Cooper* v. *Phipps,* L. R., 2d Eng. & Ir. App. 149, to be a matter of fact although it was the result of matter of law. The general rule, often recognized by this Court, undoubtedly is that money paid, with a full knowledge of all the facts of the case, under a mistaken conception of the law cannot be recovered back in an action at law. Nor will equity afford relief in such cases in the absence of special circumstances entitling the party to equitable aid. Nor will contracts resting upon a proper consideration fairly made with a full knowledge of the facts under a mistake or ignorance of the law, be set aside in equity in the absence of special grounds of equitable relief.

In the present case there was no payment of money by the appellant under mistake of law, and the fact of the existence of the fiduciary relation to which we have referred opens all contracts and transactions, resulting to his disadvantage, made between him and his trustees relative to the trust estate, to the inspection and review of a Court of Equity. In *Pomeroy in Equity,* where transactions between trustees and *cestui que trust* are treated as forming an exception to the

rule concerning mistake of law, the established doctrine of equity in reference to them is well stated, in 3rd Edition, Vol. 2, page 1494, as follows:

"Sec. 848. A particular application of the foregoing rule requires a special mention. Where an ignorance or misapprehension of the law, even without any positive, incorrect or misleading words or incidental acts, occurs in a transaction concerning the trust between two parties holding close relations of trust and confidence, injuriously affecting the one who reposes the confidence, equity will in general relieve the one who has thus been injured. The relations of trustee and *cestui que trust,* guardian and ward, and the like, are examples. The relief is here based upon the close confidence reposed—upon the duty of the trustee to act in the most perfect good faith, to consult the interests of the beneficiary, not to mislead him and not even to suffer him to be misled, when such a result can be prevented by reasonable diligence and prudence." Citing *Ex parte James,* L. R. 9 Chy. 609; *Hall* v. *Cotterson,* 52 N. J. Eq. 522.

And in *Perry on Trusts* an equally well-established principle of equity is thus stated: "But all agreements or contracts between trustee and *cestui que trust* are looked upon with suspicion by the Court and are closely scrutinized; therefore, in order that the release, confirmation, waiver or acquiescence may have any effect, the *cestui que trust* must have full knowledge of all the facts and circumstances of the case; he must also know the law and what his rights are, and how they would be dealt with by the Court."

Although the trustees in the present case acted in good faith, it is apparent from the record that the appellant reposed great confidence in them, and, on the representations of their counsel, Mr. Jacobus, who generally formed the channel of communication between them, he acceded to the incorrect and to him highly injurious scheme of distribution of the trust estate adopted by the trustees and acquiesced in its successive steps until the question of the guardian's bond arose. Having by that time grown stronger in the belief

that he was entitled to the entire estate, he came to Baltimore, and had the interviews with his trustees to which reference has already been made. The evidence as to what took place at those interviews is conflicting, but it satisfies us that he was, to some extent, dissuaded by Mr. Latrobe, who was the managing trustee, from delaying or resisting the consummation of the distribution as originally proposed, and was induced,. in part at least, to concur in it by an apprehension produced by Mr. Latrobe's statements that the opposite course on his part would give offense to the other trustee, who was father-in-law.

Upon the whole case as presented by the record, we think its disposition should be controlled by the principles announced by this Court in *Hanson* v. *Worthington, supra*. In that case the executor and trustee, under a mistaken construction of the trust, had wrongfully paid over the trust fund to the residuary legatees instead of to the ones who were legally entitled to it, and had taken releases from all of the legatees. Subsequently and after the lapse of a number of years the legatees to whom the trust fund should have been paid filed a bill against the trustee and the legatees who had wrongfully received the trust fund, asking for a correction of the error and a redistribution of the trust fund in a legal manner. One of the defenses set up to the bill was that the plaintiffs had lost their right to relief by their laches or their acquiescence and concurrence in the settlement and distribution of the fund.

The Court in that case, after determinining that the defences of laches or acquiesence and concurrence in the wrongful distribution had not been made out, said upon the case at large:

"The bequest in the will is admitted to be valid, and the accounts exhibited show conclusively that it has not been paid to the parties entitled, owing to a mistake of the executors in the construction of the will. Those accounts show also the manner in which and the persons to whom the fund has been improperly paid. The parties who have received

wrongfully, as well as the executor and trustee, are alive and in Court subject to its decree; and we see no sufficient reason why the Court may not do simple justice by an equitable adjustment of the claims of the parties and a correction of the errors which have been committed."

Applying the principles thus laid down to the present case we are of opinion that the appellant is entitled to a decree setting aside the distribution of the fund made by the Orphans' Court and cancelling the releases given by him in his own right and as guardian to the trustees and administrators, and that he is further entitled to have the two-thirds of the trust fund which were distributed to his two children, awarded and paid over to him absolutely and to hold the same in his own right.

Inasmuch however as the appellant did not use the requisite diligence to definitely ascertain his legal rights to the trust fund until after the trustees had in good faith, though erroneously, completed the distribution, and so acted toward them as to lead them to believe that he concurred in their views, we will not require them to account for or refund to him either the costs incurred in and about the distribution or the commissions allowed to them as administrators in the Orphans' Court, but will permit Mr. Latrobe to retain his portion of such commission, it being conceded that Mr. Winans gave his portion thereof to the appellant prior to the institution of this suit. For the same reason we will direct the costs of this case to be paid out of the portion of the fund awarded to the appellant before turning the same over to him.

We will accordingly reverse the decree appealed from and remand the cause for further proceeding in conformity with the views expressed in this opinion.

> *Decree reversed and cause remanded for further proceedings, the costs in this Court and below be paid out of the trust fund.*